670 A.2d 484

**PEOPLE'S COUNSEL FOR BALTIMORE COUNTY, et al.**

v.

**BEACHWOOD I LIMITED PARTNERSHIP.**

**No. 239, Sept. Term, 1995.**

Court of Special Appeals of Maryland.

Dec. 1, 1995.

Reconsideration Denied Jan. 30, 1996.

**628**

630

632

Peter Max Zimmerman (Carole S. Demilio, on the brief), Towson, for appellant, People's Counsel.

Francis X. Borgerding, Jr. (DiNenna and Breschi, on the brief), Towson, for appellants, Weber and Dembow.

John B. Gontrum (Romadka, Gontrum & McLaughlin, P.A., on the brief), Baltimore, for appellee.

Argued before MOYLAN, WENNER and CATHELL, JJ.

MOYLAN, Judge.

The appellants, People's Counsel for Baltimore County and various neighbors of the property in question, initially appealed to the Circuit Court for Baltimore County the decision of the County Board of Appeals to grant a Petition for a Zoning Reclassification that had been submitted by the appellee, the Beachwood I Limited Partnership (Beachwood). In the circuit court, Judge John Grason Turnbull, II affirmed the decision of the Board of Appeals. This appeal has followed. The appellants present, in effect, three questions for resolution:

1) Was there substantial evidence to support the finding of the Board of Appeals that the County Council had made a mistake in its earlier comprehensive zoning decision?

2) Did the Board of Appeals fail to make the specific findings necessary to justify its decision?

3) Did the Board of Appeals participate in impermissible "contract zoning" in contravention of both the Maryland case law and Baltimore County regulations?

The 148–acre property, of which 144.9 acres were the subject of the reclassification petition, is located in the North Point area of southeastern Baltimore County along the Back River, a tributary of the Chesapeake Bay. The property is bound to the west by Morse Lane (a county road) and to the north and east by a small road called Todds Point (or "Shore") Road. The property is reached via a nearby intersection between Morse Lane and North Point Boulevard, a large state

road with between four and six lanes. The intersection lies just to the south of the property.

### Zoning History of the Tract

Prior to 1984, the property was zoned M.H.–I.H. (Manufacturing, Heavy—Industrial, Heavy), the most intense zoning classification in Baltimore County. The property was owned through the 1970's by the Bethlehem Steel Corporation. In the early 1980's, subsequent owners made efforts to develop the tract industrially, but the efforts came to naught. The tract is, in major measure, an isolated and undeveloped area that has been passed over by the industrial development of Sparrows Point and North Point Boulevard.

As part of its quadrennial comprehensive zoning process, the Baltimore County Council in 1984 changed the zoning classification of the property from M.H.–I.H. to D.R. 5.5, a classification that allows for residential development at a density of up to 5.5 dwelling units per acre. As part of the subsequent 1988 comprehensive zoning, the County Council continued the zoning classification of D.R. 5.5.

In 1988, the Chesapeake Bay Critical Areas Program went into effect and the subject property, located as it was near a tributary river, was designated a "limited development area." In such a limited development area, the permitted residential density ranges from a low of 1 unit per 5 acres up to a high of 4 units per acre. The then existing D.R. 5.5 zoning was denser than what was allowed in a limited development area.

### Comprehensive Zoning of 1992

■ As part of the comprehensive zoning of 1992, the Baltimore County Council changed the zoning on the subject property from D.R. 5.5 to D.R. 1, thereby lowering the permitted residential density to 1 dwelling unit per acre. As a policy decision made by the legislative branch of a charter county, that comprehensive zoning requires no further justification to support it. It is presumptively correct. *Trainer v. Lipchin,* 269 Md. 667, 672–73, 309 A.2d 471 (1973); *Stratakis*

*v. Beauchamp,* 268 Md. 643, 652–53, 304 A.2d 244 (1973). To place the remaining discussion in some context, however, we shall note at least several criticisms that could arguably be made of that 1992 legislation, just as we shall also note several arguments that could be made in support of it.

Two neighboring communities, Edgemere and Todd's Point, are both zoned D.R. 5.5. Land immediately to the west of the subject property is zoned for manufacturing and industrial purposes. The nearest significant D.R. 1 zone in Baltimore County is located some five miles away.

On the other hand, the community of Edgemere is separated from the subject property by a body of water, Greenhill Cove; the small community of Todd's Point, moreover, was in existence before either zoning or the Critical Area law came to Baltimore County. It is also of significance that a density of 1 unit per acre falls, in terms of the Chesapeake Bay Critical Area requirements, about halfway between the lowest permitted density of one unit per 5 acres and the highest permitted density of 4 units per acre. It may also be noted that other undeveloped areas along the shoreline of Back River are in one instance zoned D.R. 1 and in other instances subject to the more restrictive zoning of R.C. 20, a Resource Conservation Zone, permitting only 1 dwelling unit per 20 acres.

In any event, the County Council's comprehensive zoning of 1992 was presumptively correct and it is, therefore, the *status quo ante* from which we proceed in assessing the propriety of any changes made therefrom.

### The County Board of Appeals

The comprehensive zoning of the subject parcel as D.R. 1 was promulgated by the Baltimore County Council as part of the Comprehensive Zoning Map it adopted on October 15, 1992. Four-and-a-half months later, on March 1, 1993, Beachwood petitioned the County Board of Appeals to reclassify the property from D.R. 1 to D.R. 3.5. It assigned as its reason for the reclassification the alleged error by the County Council in the Comprehensive Zoning Map process of 1992. The thrust

of the allegation of error was that the 1992 "zoning is out of character with the zoning of the surrounding area." It was further alleged that it would be an economic hardship on the developer, effectively amounting to confiscation, to be required to develop the property at so low a level of residential density:

> To be developed the site will require the construction of a sewage pumping station. Such facilities are impractical at the density of one dwelling per acre as limited in a D.R. 1 zone. The zone has the practical effect of making the property commercially undevelopable.

The Board of Appeals heard two days of testimony on the proposed reclassification, on November 2 and November 24, 1993. On January 21, 1994, the Board, by a vote of 2-to-1, granted Beachwood's petition and reclassified the property as D.R. 3.5. The majority opinion found as a matter of fact that the County Council was in error when it zoned the property D.R. 1:

> The Board has carefully reviewed and considered the evidence and testimony presented in these proceedings, and finds that the testimony presented by the Petitioner and, particularly, the expert testimony given by Mr. Crozier with his supporting reasons, supports *a finding of fact that the subject property was erroneously zoned by the County Council,* and that there is no logical reason for the property to be down-zoned from D.R. 5.5 to D.R. 1. We find that the facts presented by the Petitioner in its case indicate that *the D.R. 1 zoning is in fact in error,* and the Board will therefore find that the requested reclassification from D.R. 1 to D.R. 3.5 should be granted and will so order. (Emphasis supplied.)

The dissenting opinion concluded that no "error" had been committed by the County Council, as that term of art is defined in zoning law:

> I have no doubt that the D.R. 1 zoning placed on this site following the recommendation of the Planning Board resulted from the intentional action of the Council and not as a result of any mistake, nor as the result of an error as the

same is defined in the body of case law in Maryland interpreting that zoning concept.

The dissenting Board member concluded that the D.R. 1 zoning classification

result[ed] from the contemplative and deliberative process of the County Council, and not from any mistake or error, particularly in light of the fact that the D.R. 1 zoning permits a reasonable use of the land and residential development.

People's Counsel, along with protesting neighbors, appealed that reclassification to the Circuit Court for Baltimore County. On October 12, 1994, the Circuit Court ruled that the issue of whether the County Council had made an error or mistake in the 1992 comprehensive zoning was fairly debatable. It, therefore, affirmed the reclassification order of the County Board of Appeals.

### Deferential Review: To Whom Is Due the Deference?

Ordinarily, when the judicial branch of government is called on to review a decision made by an administrative agency, the watchword is deference. Courts, at all levels, are enjoined not to substitute their judgment for that of the coordinate branch of government to whom such judgment has been, in our scheme of divided government, primarily entrusted. *Red Roof Inns, Inc. v. People's Counsel*, 96 Md.App. 219, 224, 624 A.2d 1281 (1993). Courts must strive, rather, to uphold the decision of the administrative agency, if there is any evidence which can be said to have made the issue for decision by the agency fairly debatable. *Eger v. Stone*, 253 Md. 533, 542, 253 A.2d 372 (1969). "[T]he same standard applies in both this court and the circuit court." *Relay v. Sycamore*, 105 Md.App. 701, 713, 661 A.2d 182 (1995).

In the less routine institutional configuration of this case, however, the deference that is due is exponential. Both the trial court and this Court are called upon to determine, albeit deferentially, whether the Baltimore County Board of Appeals was, in its turn, appropriately deferential to the

Baltimore County Council. The Board of Appeals may not substitute its judgment for that of the County Council, even if it, had it been so empowered, might have made a diametrically different decision. The circumstances under which it may overturn or countermand a decision of the County Council are narrowly constrained. It may never simply second-guess.

■ The deference that is due by all, including the County Board of Appeals, to the decisions of the County Council is explained in part by the Jeffersonian homage that we pay to the legislative branch of government generally. Within its appropriate governmental sphere, the Baltimore County Council is the legislature for the citizens of Baltimore County. MARYLAND CONSTITUTION, Art. XI–A, § 3; *Ritchmount Partnership v. Board of Supervisors,* 283 Md. 48, 62–63, 388 A.2d 523 (1978) ("The effect of the language in the opening sentence of Sect. 3 is to render the council the ultimate repository of all legislative power possessed by the county.") When it undertakes, every four years, its comprehensive zoning function, it speaks with the voice of the people. *Hyson v. Montgomery County,* 242 Md. 55, 63, 217 A.2d 578 (1966). As with all legislative bodies, it may sometime make policy decisions that are, in the eyes of some observers, wrong. For the ordinary rightness or wrongness of their decisions, however, legislators are answerable only to their electorates at the next election—not to the courts and not to the County Board of Appeals.

Even in the face of comprehensive zoning or rezoning by the County Council, however, there are certain powers delegated to the County Board of Appeals to effect zoning reclassifications with respect to particular pieces of property. The BALTIMORE COUNTY CODE (1978), § 2–356(a)(1) provides, in pertinent part:

> The board of appeals shall have the power to make a change as to the district, division, or zone within which a particular piece of property is classified (zoning reclassification) as hereinafter provided.

Section 2–356(j) then imposes the limits on that power. The Board of Appeals may reclassify *only* if it is able to find at least one of two possible preconditions satisfied. Subsection (j) provides, in pertinent part:

> Before any property is reclassified pursuant to this section, the board of appeals must find:
>
> (1) That ... there has occurred a substantial change in the character of the neighborhood in which the property is located since the property was last classified *or that the last classification of the property was established in error.* (Emphasis supplied.)

It is the second of the two preconditions that is involved in this case. The petition for the reclassification came a scant 4½ months after the adoption of the 1992 Comprehensive Zoning Map, and it is clear that no substantial change occurred in the character of the neighborhood during those four months. Indeed, Beachwood made no allegation of substantial change. See, moreover, BALTIMORE COUNTY CODE (1978), § 2–356(k). The only question is whether the County Council was guilty of a *mistake* or *error* in the course of its 1992 comprehensive zoning. The issue is precisely as we posed it in *Boyce v. Sembly*, 25 Md.App. 43, 44, 334 A.2d 137 (1975):

> This case presents the narrow question of whether the County Council of Baltimore County (Council) committed basic and actual "mistake" or "error" as those interchangeable terms are used in zoning law.

### The Strong Presumption of Validity

When it undertakes to grant a zoning reclassification, the Board of Appeals does not enjoy the luxury of writing on a clean slate. For it to believe, as a value judgment or as a policy determination, that the County Council decision under review was wrong is not *ipso facto* to believe that the wrongful decision was necessarily a "mistake" or was based on an "error."

The deference in this regard due to the decision of the County Council by the Board of Appeals was well expressed by the Court of Appeals in *Stratakis v. Beauchamp*, 268 Md.

643, 304 A.2d 244 (1973). In that case, as here, the Baltimore County Board of Appeals issued a zoning reclassification pursuant to a reclassification petition. There, as here, the petition for reclassification was filed a bare four months after the County Council had promulgated its quadrennial comprehensive rezoning. There, as here, the comprehensive rezoning had lowered the permitted density of a parcel of land. There, as here, the reclassification by the Board of Appeals merely returned the zoning to a density more closely approaching its original classification. The Board of Appeals, as here, ruled that the County Council had been guilty of a mistake or error in its "down-zoning" of the property. The Court of Appeals held that there was not sufficient evidence of a mistake on the part of the County Council to have made that issue fairly debatable. Judge Levine set out the stern standard of review:

> While, in recent years, we have had occasion to enunciate a number of important principles applicable to the law of zoning, perhaps none is more rudimentary than the strong presumption of the correctness of original zoning and of comprehensive rezoning. To sustain a piecemeal change in circumstances such as those present here, *strong* evidence of mistake in the original zoning or comprehensive rezoning or evidence of substantial change in the character of the neighborhood must be produced.... Since, as we have also said, this burden is onerous, ... the task confronting appellants, whose application followed the comprehensive rezoning by merely four months, is manifestly a difficult one.

268 Md. at 652–53, 304 A.2d 244. (Emphasis in original) (Citations omitted). *See also Trainer v. Lipchin,* 269 Md. 667, 672–73, 309 A.2d 471 (1973); *Pattey v. Board of County Commissioners,* 271 Md. 352, 359, 317 A.2d 142 (1974).

Another articulation of the strong presumption of validity attaching to comprehensive zoning is found in *Wells v. Pierpont,* 253 Md. 554, 253 A.2d 749 (1969). That also was a case in which the Baltimore County Board of Appeals issued a zoning reclassification changing what the Baltimore County Council had earlier done in adopting its Comprehensive Zoning Map. In that case, the Board of Appeals found evidence

of a substantial change in the intervening three-year period and the circuit judge affirmed that reclassification by the Board of Appeals. The Court of Appeals reversed the circuit court, holding that the heavy burden cast upon one seeking a zoning reclassification had not been satisfied. Judge McWilliams there described the weight of the presumption of validity attending comprehensive rezoning:

> It is now firmly established that there is a strong presumption of the correctness of original zoning and of comprehensive rezoning, and that to sustain a piecemeal change therefrom there must be produced strong evidence of mistake in the original zoning or comprehensive rezoning or else evidence of substantial change in the character of the neighborhood. . . . And, of course, the burden of proof facing one seeking a zoning reclassification is quite onerous.

253 Md. at 557, 253 A.2d 749. (Citations omitted). *See also Mayor and Council of Rockville v. Henley,* 268 Md. 469, 302 A.2d 45 (1973); *Heller v. Prince George's County,* 264 Md. 410, 412, 286 A.2d 772 (1972); *Cabin John Ltd. v. Montgomery County,* 259 Md. 661, 271 A.2d 174 (1970); *Creswell v. Baltimore Aviation,* 257 Md. 712, 721, 264 A.2d 838 (1970).

### What Is A "Mistake" or An "Error"?

As helpful as the case law otherwise was in describing 1) the strong presumption of validity attending comprehensive zoning or rezoning by a county council and 2) the "onerous" burden on a landowner to show an error or mistake in the comprehensive zoning, it was only with a series of three opinions by Judge Rita Davidson, two for this Court and one for the Court of Appeals, that we at last got a firm handle on precisely what was meant by the terms of art "mistake" and "error." In the first place, "mistake" and "error" are "interchangeable terms [as] used in zoning law." *Boyce v. Sembly,* 25 Md.App. 43, 44, 334 A.2d 137 (1975).

### 1. "Change or Mistake" Rule Inapplicable to Comprehensive Rezoning:

It is Judge Davidson's opinion in *Coppolino v. County Board of Appeals,* 23 Md.App. 358, 328 A.2d 55 (1974) that is

particularly helpful in pinpointing which decision, in a series of possibly flip-flopping decisions, enjoys the strong presumption of validity and is due the deference of subsequent decision makers. That is the place where the mistake must be found.

In *Coppolino,* as in this case, the property owner had enjoyed a classification under an earlier comprehensive zoning that would have permitted a more intense development of the property. There, as here, a subsequent comprehensive zoning "downzoned" the property. In *Coppolino,* the 1971 comprehensive zoning downzoned to D.R. 5.5 Parcel C, which had enjoyed a D.R. 16 classification under the 1966 comprehensive zoning. In this case, the 1992 comprehensive zoning downzoned to D.R. 1 Beachwood's property, which had enjoyed a D.R. 5.5 classification under the comprehensive zonings of 1988 and 1984. In *Coppolino,* moreover, the 1971 downsizing by the County Council was not only a departure from the earlier 1967 comprehensive zoning, but was also contrary to the recommendations of the Planning Staff and the Planning Board. Moreover, "[t]he reason for these [downzoning] actions [did] not appear in the record." 23 Md.App. at 364, 328 A.2d 55. There, as here, the Baltimore County Board of Appeals, by a similar two-to-one vote, ruled that the County Council's comprehensive zoning had been flawed by a mistake or error.

But what, precisely, was the nature of the purported mistake or error which the Board of Appeals believed to have fatally infected the County Council's comprehensive zoning? The owners argued that the earlier "comprehensive zoning of 1966 [was] presumed to be correct," 23 Md.App. at 368, 328 A.2d 55, and "that there was error in the 1971 comprehensive zoning" for failing to honor that presumptive validity of the earlier comprehensive zoning:

> The owners maintain that the then existing zoning of the subject property could not properly be altered by the Council *unless there was evidence of error in the D.R.–16 classification assigned in 1966 or change in the character of the neighborhood subsequent to the assignment of that classification.*

In support of this position the owners point out that Baltimore County Code (1972 Cum.Supp.) §§ 22–20 and 22.22.1 now require that a comprehensive rezoning of the entire county take place at least once in every four years. They argue that the frequent use of the comprehensive rezoning technique, absent the "change or mistake" rule, will permit arbitrary and capricious action on the part of the Council, which will undermine the permanence and stability of zoning classifications intended to be protected by the presumption of validity accorded comprehensive rezoning.

23 Md.App. at 368–69, 328 A.2d 55. (Footnote omitted) (Emphasis supplied).

In just such a fashion, the County Board of Appeals in the present case seemed to cast on the County Council a burden to justify why its 1992 comprehensive zoning had departed from its presumptively correct 1988 comprehensive zoning:

Originally the property was zoned Manufacturing Heavy (M.H.). In 1984 the property was rezoned from M.H. to D.R. 5.5, and the D.R. 5.5 zoning was reaffirmed in the 1988 map process. *The Board can find,* from the testimony and evidence received, *no specific reason for this down-zoning.*

. . . . .

*[T]here is no logical reason for the property to be down-zoned* from D.R. 5.5 to D.R. 1. (Emphasis supplied.)

The circuit court, as well, seemed to cast a burden on the County Council to justify its 1992 departure from its earlier comprehensive zoning:

It is inconceivable to this Court that the Council could downgrade this property to D.R. 1 when that zoning would be completely incompatible with the surrounding zoning in this area. *This Court questions why this property was ever changed* from D.R. 5.5 . . . (Emphasis supplied.)

*Coppolino,* however, rejected such an approach, which, in effect, would have allocated to the County Council the burden of justifying any change it made in 1992 from the pre–1992 *status quo. Coppolino* pointed out that the "Court of Appeals and this Court have consistently held that the 'change or

mistake' rule is not controlling in cases involving comprehensive rezoning." 23 Md.App. at 369, 328 A.2d 55. *See also Scull v. Coleman*, 251 Md. 6, 12, 246 A.2d 223 (1968); *Trustees v. Baltimore County*, 221 Md. 550, 560–61, 158 A.2d 637 (1960); *Roberts v. Grant*, 20 Md.App. 247, 253, 315 A.2d 103 (1974). A subsequent comprehensive zoning is not, therefore, to be charged with mistake or error because of its failure to have found a mistake or error in earlier comprehensive zoning which it changed. It has no such burden. *Coppolino's* holding in this regard was clear:

> [W]e hold that under the cyclical zoning process established by Baltimore County the "change or mistake" rule is not controlling and that the absence of a showing of either change or mistake prior to a comprehensive rezoning does not constitute error.

23 Md.App. at 370, 328 A.2d 55. *McBee v. Baltimore County*, 221 Md. 312, 317, 157 A.2d 258 (1960), spoke to the same point:

> When such a new [comprehensive zoning] map is adopted, it is entitled to the same presumption that it is correct as is an original zoning.

The Board of Appeals' finding in this case of "no specific reason for this down-zoning" is, therefore, readily explained by the self-evident fact that the County Council was under no obligation to give any specific reason for the downzoning. In no event does it constitute the requisite mistake or error, without a proper finding of which the reclassification made by the County Board of Appeals was unjustified.

### 2. *Mistake or Error is Something Other Than a Questionable Choice:*

It was in the second of the series of three opinions, *Boyce v. Sembly*, 25 Md.App. 43, 334 A.2d 137 (1975), that Judge Davidson set out explicitly that a conclusion on the part of the County Board of Appeals that the comprehensive zoning of the County Council under review was wrong, ill-advised, or unsuitable is not an adequate finding of an *actual*

*mistake or error* within the contemplation of zoning law. The legal meaning of "mistake" or "error" is far more restricted:

> In order to assess the evidence before the Board, it is necessary to understand the inherent nature of the terms "mistake" or "error" as they are used in zoning law. A perusal of cases, particularly those in which a finding of error was upheld, indicates that the presumption of validity accorded to a comprehensive zoning is overcome and *error or mistake is established when there is probative evidence to show that the assumptions or premises relied upon by the Council at the time of the comprehensive rezoning were invalid.* Error can be established by showing that at the time of the comprehensive zoning *the Council failed to take into account then existing facts,* or projects or trends which were reasonably foreseeable of fruition in the future, *so that the Council's action was premised initially on a misapprehension.*

25 Md.App. at 50–51, 334 A.2d 137. (Emphasis supplied).

 To grasp this limited content of the terms "mistake" and "error" in zoning law, it may be helpful to draw an analogy to a flaw in the syllogistic process. The finding of a mistake or error is not so much concerned with the logical validity or merit of ultimate conclusion-drawing as it is with the adequacy and accuracy of the factual premises that underlie the conclusion-drawing. A conclusion based on a factual predicate that is incomplete or inaccurate may be deemed, in zoning law, a mistake or error; an allegedly aberrant conclusion based on full and accurate information, by contrast, is simply a case of bad judgment, which is immunized from second-guessing.

 *Boyce* furthermore makes it clear that the burden is on those seeking a reclassification to show *both* 1) the then-existing conditions that allegedly made the comprehensive zoning incorrect *and also* 2) the literal failure of the County Council even to have considered those conditions:

> *It is presumed,* as part of the presumption of validity accorded comprehensive zoning, *that at the time of the*

*adoption of the map the Council had before it and did, in fact, consider all of the relevant facts and circumstances then existing.* Thus, in order to establish error based upon a failure to take existing facts or events reasonably foreseeable of fruition into account, it is necessary *not only to show the facts that existed* at the time of the comprehensive zoning *but also which,* if any, *of those facts were not actually considered* by the Council. This evidentiary burden can be accomplished by showing that specific physical facts were not readily visible or discernible at the time of the comprehensive zoning . . .

25 Md.App. at 51–52, 334 A.2d 137. (Emphasis supplied).

In the present case, there is no shred or hint of suggestion in either the opinion of the circuit court or the majority opinion of the County Board of Appeals that at the time of the comprehensive zoning in 1992 there were then existing conditions with respect to the Beachwood property or with respect to surrounding areas that were not known to the County Council. There was, *ipso facto,* no showing of the requisite mistake or error on which a reclassification would necessarily depend. We find appropriate in this regard the conclusion we reached under similar circumstances in *Boyce:*

Thus, *unless there is probative evidence to show that there were then existing facts which the Council,* in fact, *failed to take into account,* or subsequently occurring events which the Council could not have taken into account, the presumption of validity accorded to comprehensive zoning is not overcome and *the question of error is not "fairly debatable."*

25 Md.App. at 52, 334 A.2d 137. (Footnote omitted) (Emphasis supplied).

A classic instance in which the Baltimore County Board of Appeals erroneously attributed a "mistake" to the County Council simply on the basis of the Board's conclusion that the Comprehensive Zoning had involved a questionable choice was the case of *Trainer v. Lipchin,* 269 Md. 667, 309 A.2d 471 (1973). The Board of Appeals "concluded that the Council had been 'at least partially in error' in placing the front part of the

property in D.R. 16, since it had 'completely lost its residential character.'" 269 Md. at 670, 309 A.2d 471. In substituting its judgment for that of the County Council, the Board of Appeals relied on one expert witness who testified "that it would not be 'practical' to build apartments on the subject parcel," 269 Md. at 674, 309 A.2d 471, and another witness who offered his conclusion that the Comprehensive Zoning was erroneous because "in our estimation the best suitable use for that is commercial." 269 Md. at 675, 309 A.2d 471. The Court of Appeals held that such evidence was insufficient to make the issue of mistake fairly debatable. Indeed, Judge Levine disdainfully characterized the case as "yet another assault on the county-wide Comprehensive Zoning Maps adopted by the Baltimore County Council." 269 Md. at 668, 309 A.2d 471.

*And see Shadynook Imp. Ass'n v. Molloy,* 232 Md. 265, 192 A.2d 502 (1963), as yet another occasion 1) on which the Baltimore County Board of Appeals, in effect, second-guessed the County Council, essentially because of its conclusion that the Comprehensive Zoning had been wrong; 2) on which the Baltimore County Circuit Court affirmed the zoning reclassification by the County Board of Appeals; and 3) on which the Court of Appeals reversed both the Circuit Court and the Board of Appeals, holding that the evidence before the Board of Appeals was not legally sufficient to make the issue of a possible mistake on the part of the County Council even fairly debatable.

When reviewing a legislative action by the County Council, such as comprehensive zoning, even the courts, with broad inherent powers not vested in the County Board of Appeals, are limited in their power of review. In *County Council for Montgomery County v. District Land Corp.,* 274 Md. 691, 337 A.2d 712 (1975), the Court of Appeals pointed out:

> It is well settled that the judicial branch of government cannot institute an inquiry into the motives of the legislature in the enactment of laws, lest the legislature be subordinated to the courts . . .

274 Md. at 704, 337 A.2d 712. The *District Land* opinion quoted with approval from C. Rhyne, *Municipal Law,* § 9–4 at 229–30 (1957):

> "As a general rule, the motives, wisdom or propriety of a municipal governing body in passing an ordinance are not subject to judicial inquiry...."

274 Md. at 705, 337 A.2d 712. Judge Singley then made it clear that the same deference was due by courts to the passing of zoning ordinances:

> The same principle applies to zoning ordinances, which are presumed to be valid. As a consequence, *courts will not pass on the wisdom of such measures.* (Emphasis supplied.)

*Id.* A *fortiori,* the County Board of Appeals may not "pass on the wisdom of such measures."

 This is not to say that the County Council may operate with impunity without any restraints on its legislative function. The general guidelines within which it must operate when engaged in comprehensive zoning were well spelled out by Chief Judge Hammond in *Norbeck v. Montgomery County,* 254 Md. 59, 66, 254 A.2d 700 (1969):

> The broad test of the validity of a comprehensive rezoning is whether it bears a substantial relationship to the public health, comfort, order, safety, convenience, morals and general welfare, and such zoning enjoys a strong presumption of validity and correctness. A property owner has no vested right to the continuance of the zoning status of his or neighboring property, merely the right to rely on the rule that a change will not be made unless it is required for the public good.

(Citations omitted). *See also County Council for Montgomery County v. District Land Corp., supra,* 274 Md. at 699–702, 337 A.2d 712.

 There resides in the courts the ultimate authority to determine whether the action of the County Council was "arbitrary, capricious, discriminatory, or illegal." *Ark Readi–Mix Concrete Corp. v. Smith,* 251 Md. 1, 4, 246 A.2d 220

(1968); *Hewitt v. Baltimore County,* 220 Md. 48, 56–57, 151 A.2d 144 (1959); *Wakefield v. Kraft,* 202 Md. 136, 141, 96 A.2d 27 (1953). The County Board of Appeals, however, does not enjoy any supervisory power or appellate jurisdiction over the actions of the Baltimore County Council. Express Powers Act, MD.CODE (1957, 1994 Repl.Vol.), ART. 25A, § 5(V); BALTIMORE COUNTY CHARTER, § 602(a); *United Parcel v. People's Counsel,* 336 Md. 569, 587–590, 650 A.2d 226 (1994).

With respect to petitions for zoning reclassifications, the County Board of Appeals enjoys "original and exclusive jurisdiction." BALTIMORE COUNTY CHARTER, § 602(e); *United Parcel v. People's Counsel,* 336 Md. at 587, 650 A.2d 226. That original jurisdiction is, however, expressly confined by the provisions of BALTIMORE COUNTY CODE, §§ 2–356(a) and (j), which limit the reclassifying authority of the County Board of Appeals to those instances wherein they find evidence of either "a substantial change in the character of the neighborhood" or a "mistake" or "error" in the comprehensive zoning. That is a far cry from appellate jurisdiction over the comprehensive zoning of the County Council on the ground that it may have been "arbitrary, capricious, discriminatory, or illegal." Original jurisdiction over zoning reclassification petitions is not coterminous with appellate jurisdiction over the zoning actions of the County Council.

### 3. *The Conclusion of an Expert That a Mistake Was Made:*

The third of the series of opinions by Judge Davidson clarifying the concept of "mistake" or "error" was *Howard County v. Dorsey,* 292 Md. 351, 438 A.2d 1339 (1982). In part, the *Dorsey* opinion served to place the *imprimatur* of the Court of Appeals on the definition of mistake or error that Judge Davidson had earlier hammered out for this Court in *Boyce v. Sembly.* A significant part of the *Dorsey* opinion, 292 Md. at 356–359, 438 A.2d 1339, consisted of extensive quotation, with approval, from the *Boyce v. Sembly* opinion, 25 Md.App. at 50–53, 334 A.2d 137.

A part of that *Boyce v. Sembly* opinion, 25 Md.App. at 53, 334 A.2d 137, not yet discussed in this opinion, and quoted with approval by the *Dorsey* opinion, observed:

> The Court of Appeals and this Court have stated that an opinion, even that of an expert, is not evidence strong or substantial enough to show error in a comprehensive rezoning unless the reasons given by the witness as the basis for his opinion, or other supporting facts relied upon by him, are themselves substantial and strong enough to do so.

292 Md. at 359, 438 A.2d 1339.

The appellate decisions holding that the testimony of an expert that a "mistake" had been made in comprehensive zoning was not sufficient to generate a fairly debatable issue as to "mistake" have done so for various reasons, sometimes for a confusing admixture of reasons in a single case. In the furtherance of analytic clarity, however, some of those reasons can be sorted out into discrete sub-groups.

### a. Inadequate Expert Testimony: Conclusory or Quasi–Conclusory Opinions

A self-evident reason for rejecting as an effective catalyst an expert opinion that a mistake was made is the fact that the opinion is merely conclusory or is, at best, quasi-conclusory. Illustrative of the principle that the opinion of an expert is of little or no weight in the absence of strong supporting facts is *Mayor and Council of Rockville v. Henley*, 268 Md. 469, 473–74, 302 A.2d 45 (1973):

> The only testimony of the question was the bald assertion by appellee's expert witness, Mr. Dieudonne, a qualified realtor and appraiser, who simply responded to the question "do you think the present zoning is the correct zoning, R–60" by saying "No, sir, I think that is wrong." And then, when asked what would be the proper classification, answered, "I–1, and I think that would stabilize that area and I don't believe there would be an infiltration into the Lincoln Park sector of residential homes." These naked declarations, unsubstantiated by facts, are insufficient to

overcome the presumption of correctness which attaches with the adoption of a comprehensive zoning plan.

*See also Smith v. County Comm'r of Howard County,* 252 Md. 280, 249 A.2d 708 (1969).

There have been numerous occasions when the Court of Appeals has held that the testimony of expert witnesses that there had been a mistake was not sufficient to generate a fairly debatable issue with respect to mistake. On a number of occasions reclassifications by the County Board of Appeals, finding a mistake on the basis of such opinions, were overturned. *Pahl v. County Bd. of Appeals,* 237 Md. 294, 206 A.2d 245 (1965); *Brenbrook Const. Co. v. Dahne,* 254 Md. 443, 255 A.2d 32 (1969); *Creswell v. Baltimore Aviation,* 257 Md. 712, 264 A.2d 838 (1970); *Stratakis v. Beauchamp,* 268 Md. 643, 304 A.2d 244 (1973). On another occasion, it was a reclassification by the Zoning Commissioner of Baltimore County based on an unsupported expert opinion that was held to have been without the benefit of substantial evidence of mistake. *Agneslane, Inc. v. Lucas,* 247 Md. 612, 233 A.2d 757 (1967).

### b. Inadequate Expert Testimony: Predicated on Economic Disadvantage

Sometimes, by contrast, the expert opinion that a "mistake" had been made in the comprehensive zoning was based on a clearly identified and extensively developed predicate. Even in some of those cases, however, the expert opinions have been dismissed as insufficient to generate a fairly debatable issue as to "mistake" for the very different reason that the predicates themselves are *immaterial* on the issue of actual "mistake" or "error," as those precise terms of art are used in zoning law.

One particular type of support for an expert opinion that has generally been found to have been inadequate to show "mistake" is the expert's conclusion that the Comprehensive Zoning in question will render the property unsuitable for development at all or, at least, unsuitable for development with economic feasibility.

In *Coppolino,* the developers had offered as an alternative, or additional, reason why the County Council had been guilty of a mistake in downzoning the subject property the testimony of a "number of expert witnesses express[ing] the opinion that the subject property was 'unsuitable' for development in the D.R. 5.5 zone because of its topography, rock outcroppings, and proximity to Ebenezer Road and the proposed Perry Hall Boulevard." 23 Md.App. at 370, 328 A.2d 55. This Court pointed out, however, that the experts had "conceded that single-family houses could be developed on the property" and concluded that the mere fact that the property might not be suitable for development in a more economically advantageous way was not evidence of mistake in the Comprehensive Zoning. In overturning the reclassification by the County Board of Appeals, we held that the evidence was not sufficient to make the issue of mistake fairly debatable. 23 Md.App. at 371–72, 328 A.2d 55.

In a similar vein, Beachwood argues in this case that the County Council was guilty of a "mistake" in zoning the property D.R. 1 because of its "erroneous assumption" that the property could be developed in an economically feasible way with that density. Beachwood's brief before us is very clear in this regard:

A final *erroneous assumption* of the Council was *that the property could be developed at all at a D.R. 1 density.* As the testimony indicated, the property needed public sewer service. If the cost of the road improvements required by the County after the fiftieth unit is built is added to the cost of the sewer needed both to serve the project and the surrounding houses, then the infrastructure alone mandates that *to have marketable prices on homes more density than D.R. 1 permits is necessary to build the project.* Without the D.R. 3.5 zone making the necessary improvements to the roads and bringing sewer to the site becomes virtually impossible. These *financial considerations alone would justify rezoning based on the incorrect assumptions of the Council.* (Emphasis supplied.)

Indeed, in *Coppolino,* the County Board of Appeals had gone so far as to rule not simply that the comprehensive downzoning had been a "mistake" but also that it had amounted to a confiscation of the property. In pointing out that economic disadvantage is not synonymous with confiscation, we concluded:

The Court of Appeals and this Court have stated that an opinion, even that of an expert, is not evidence strong or substantial enough to show error in the comprehensive rezoning or confiscation unless the reasons given by the expert as the basis for his opinion, or other supporting facts relied upon by him, are themselves substantial and strong enough to do so. Moreover, the Court of Appeals has repeatedly held that in order to obtain a rezoning on the basis of an unconstitutional confiscation, *an applicant must show that he has been deprived of all reasonable use of his property and that it cannot be used for any of the permitted uses in the existing zone.* Viewed in this light the expert testimony presented here does not pass muster.

23 Md.App. at 371–72, 328 A.2d 55. (Citations omitted) (Emphasis supplied). *Cabin John, Ltd. v. Montgomery County,* 259 Md. 661, 671, 271 A.2d 174 (1970), also observed:

Neither the fact that rezoning may result in a more profitable use of land nor that hardship may follow the retention of an existing classification is sufficient justification for rezoning.

In *Boyce,* the developers, in an effort to show that the County Board of Appeals had been correct in finding a mistake in the Comprehensive Zoning, offered a number of conclusory arguments as to why "the subject property was then unsuitable for residential development." 25 Md.App. at 53–54, 334 A.2d 137. In addition, they offered a "witness qualified in the fields of real estate and real estate appraisal and the contract purchaser of the subject property [who] testified that it was 'unsuitable' for residential development because of its physical characteristics and its proximity to the railroad tracks." 25 Md.App. at 54, 334 A.2d 137. This Court

concluded that the evidence was not legally sufficient to make the issue of mistake or error fairly debatable for two reasons. The second of these, the absence of any evidence that the County Council had been unaware of these conditions, has already been discussed.

We offered as our initial reason, however, the fact that the conclusory arguments and even the quasi-conclusory testimony of the expert had not been enough to overcome the strong presumption of validity in the Comprehensive Zoning:

First, because the conclusion that the subject property was unsuitable for residential development was not supported by adequate reasons or facts, it was entitled to little if any probative value. It was not sufficiently strong and substantial to overcome the presumption of validity of the comprehensive zoning.

25 Md.App. at 55, 334 A.2d 137.

### c. Inadequate Expert Testimony: Predicated on Incompatibility With Surroundings

It is frequently the case, as in the situation now under review, that an expert opinion that a mistake was made in the comprehensive zoning is based on the expert's observation that the zoning of the parcel in question is incompatible with the zoning of surrounding tracts or parcels. Frequently, that conclusion as to incompatibility is buttressed by graphs, charts, diagrams, maps, and aerial photographs. Incompatibility in the end result, however, has been held to be immaterial on the issue of a mistake or error in the County Council's decisional process.

In *Howard County v. Dorsey,* a "witness qualified in the field of planning, after describing the subject property and its environs, testified that it was a mistake to classify the subject property in the R–12 zone because 'the property is surrounded by industrial.'" The Court of Appeals concluded that expert opinion, based only on the *incompatibility* between the residential property in question and the surrounding industrial

property was "insufficient to make the question of 'error' or 'mistake' fairly debatable." 292 Md. at 364–65, 438 A.2d 1339.

The *Howard County v. Dorsey* situation, in that regard, bears a strong resemblance to the situation before us, in which a similar opinion as to "incompatibility" also played a major role. In this case, the only testimony before the County Board of Appeals to the effect that the County Council's 1992 Comprehensive Zoning had been a mistake was that of Samuel Crozier, an expert land planner. Indeed, this was the only basis for the finding by the Board of Appeals that a mistake had been made by the County Council:

> The Board ... finds that the testimony presented by the Petitioner and, particularly, the expert testimony given by Mr. Crozier with his supporting reasons, supports a finding of fact that the subject property was erroneously zoned by the County Council.

Early in its majority opinion, the County Board of Appeals summed up in full detail the testimony of Mr. Crozier:

> Samuel Crozier, an expert land planner, testified that he has studied this site, and it was his opinion that the D.R. 1 zoning is in error. *He noted that one has to go almost 5 miles from the site to find any D.R. 1, which makes it totally out of character with the area.* He further testified that it is recommended for low density urban residential, and low density refers to 3.5. He further testified that the Growth Management Plan should conform to the "built-out" area nearby, and that D.R. 1 does not comply with this and D.R. 3.5 does. *It was his expert opinion that* there is no reason to zone this property D.R. 1 since all services are available, there are no problems D.R. 3.5 under the documented site plans, *the proposed use is compatible with all other uses in the area,* and D.R. 3.5 and not D.R. 1 was the proper zoning for this parcel. (Emphasis supplied.)

A large part of Mr. Crozier's testimony consisted simply of describing the zoning of surrounding tracts and pointing out that the nearest D.R. 1 zone was approximately five miles away. His conclusion was that the proposed reclassification of

D.R. 3.5 was compatible with the surrounding area and not that the comprehensive D.R. 1 zoning was, *per se*, incompatible. In any event, all of the facts as to which Mr. Crozier testified would not establish mistake or error for the reason noted by *Howard County v. Dorsey:*

> Thus, there was no evidence to show that the initial premises of the Council with respect to the subject property were incorrect and that consequently the classification assigned at the time of the comprehensive rezoning was improper.
>
> When all is said and done, this record is totally devoid of any evidence to show that at the time of the comprehensive zoning of the subject property the Council failed to take into account any facts or circumstances then existing relevant to the subject property and its environs so that its initial assumptions and premises in determining the appropriate classification for the subject property were erroneous.

292 Md. at 365–66, 438 A.2d 1339.

With respect to the failure of an applicant for rezoning to show mistake or error based on alleged incompatibility with surrounding zoning classifications, *Boyce* similarly concluded:

> There is not an iota of evidence in the record to indicate that at the time of the comprehensive zoning of the subject property the Council was unaware of either the zoning reclassifications or development which had taken place between 1955 and 1971.

25 Md.App. at 56, 334 A.2d 137.

### d. Inadequate Expert Testimony: Predicated on Divergence From Master Plan

The testimony of Mr. Crozier also made it clear that his conclusion that the 1992 Comprehensive Zoning had been a mistake was based in part on its failure to conform to the Baltimore County Master Plan and with the attendant Growth Management Program Guidelines. He pointed out that the Baltimore County Master Plan, adopted in February of 1990, labeled the area under discussion as "Low Density Urban Residential," which is defined as zoning between D.R. 3.5 and

D.R. 5.5. He further pointed out that the Baltimore County residential zoning guidelines state that residential zoning should be equivalent to the existing ("built out") density within the surrounding area or neighborhood and that the surrounding densities to the Beachwood tract were considerably greater than D.R. 1.

> *Howard County v. Dorsey,* however, was very emphatic that there is no requirement that a comprehensive zoning plan must conform to the recommendations of an applicable master plan.

292 Md. at 363, 438 A.2d 1339. Holding to a similar effect was *Pattey v. Board of County Commissioners,* 271 Md. 352, 360, 317 A.2d 142 (1974):

> As we have said, a master plan is only a guide and is not to be confused with a comprehensive zoning, zoning map, or zoning classification.

In *Montgomery County v. Woodward & Lothrop,* 280 Md. 686, 704, 376 A.2d 483 (1977), Chief Judge Murphy observed:

> Nor is there any requirement, absent a statute, that the map amendment must adhere to the recommendations of the General or Master Plan. Such land use planning documents represent only a basic scheme generally outlining planning and zoning objectives in an extensive area, and are in no sense a final plan; they are continually subject to modification in the light of actual land use development and serve as a guide rather than a strait jacket.

*See also People's Counsel v. Webster,* 65 Md.App. 694, 701–03, 501 A.2d 1343 (1986); *Floyd v. County Council of Prince George's County,* 55 Md.App. 246, 258–59, 461 A.2d 76 (1983).

A definitive statement on this subject is that found in *Nottingham Village v. Baltimore County,* 266 Md. 339, 292 A.2d 680 (1972). In that case, Nottingham Village and The Rouse Company sought a declaratory judgment that the comprehensive zoning promulgated by the Baltimore County Council in 1971 was invalid because of its failure to conform to the Master Plan for Baltimore County. In rejecting the

argument made by the developers, Judge Singley stated for the Court of Appeals:

> Underlying this argument is a common misconception—a confusion between the planning function, the end product of which is the Master Plan, specifically provided for in County Code, Art. II. Planning, §§ 22–12 through 22–17, and the zoning function, covered by Code, Art. III. Zoning, §§ 22–18 through 22–31. Zoning or rezoning in accordance with a comprehensive plan is a legislative function. *There is no requirement that the comprehensive plan adopted by the legislative body must conform to the recommendations of the Master Plan.*

266 Md. at 354, 292 A.2d 680. (Citations omitted) (Emphasis supplied).

Particularly pertinent to the case now before us was the further observation of the Court of Appeals:

> While it is true that other jurisdictions have by statute required that zoning ordinances be in accordance with the master plan, Baltimore County has not.

*Id.* (Citation omitted).

### No Fairly Debatable Issue As To "Mistake" In Comprehensive Zoning

We hold that the evidence before the County Board of Appeals was not sufficient to generate a fairly debatable issue that there had been a mistake in the 1992 Comprehensive Zoning of the County Council. Absent such mistake, the County Board of Appeals should not have granted the rezoning classification and the Circuit Court for Baltimore County should not have affirmed that action by the Board of Appeals.

The fact that the 1992 Comprehensive Zoning departed from earlier comprehensive zonings is of no consequence. The fact that the D.R. 1 zoning is out of character with surrounding zoning does not *per se* establish a mistake on the part of the County Council. The fact that the County Master Plan, as a set of guidelines, may have suggested a more intensive zoning does not establish a mistake on the part of

the County Council. The fact that a more intense residential zoning would have been compatible with surrounding circumstances does not, *ipso facto*, establish that the D.R. 1 zoning was not also compatible. The fact that a more intense residential zoning would have made development of the tract more economically advantageous to the property owner does not establish a mistake in the Comprehensive Zoning.

Independent of all other considerations, moreover, is the over-arching consideration that none of the circumstances argued by Beachwood were shown to have been unknown to the County Council at the time of the 1992 Comprehensive Zoning. It follows that the issue of mistake was not fairly debatable before the County Board of Appeals and its decision cannot be sustained.

### *People's Counsel v. Mockard: The Procedural Flaw*

■ Our reversal of the Circuit Court for Baltimore County and, indirectly, our overturning of the zoning reclassification granted by the Baltimore County Board of Appeals rests on two independent grounds. We conclude not only that the *decision* of the County Board of Appeals was *substantively flawed* because the issue of "mistake" was not fairly debatable, but also that the *opinion* announcing the decision was *procedurally flawed.* Dispositive of this fatal procedural flaw is our decision in *People's Counsel for Baltimore County v. Mockard,* 73 Md.App. 340, 347–51, 533 A.2d 1344 (1987).

BALTIMORE COUNTY CODE (1978), § 2–356(j) explicitly spells out what must be done by the County Board of Appeals before the zoning of a property may be reclassified:

(j) *Findings prior to reclassification.* Before any property is reclassified pursuant to this section, the board of appeals must find . . .

Subsection (j)(1), as has already been discussed, requires an explicit finding of either "a substantial change in the character of the neighborhood" or "that the last classification of the property was established in error." It is subsection (j)(2) that then sets forth in detail a list of the factors that must be

considered and as to which findings must be made. The factors must be considered and the findings must be made, moreover, *both* with respect to the finding of change or mistake, in the first instance, *and also* with respect to the prospective reclassification of the property that is to be made, in the second instance. Subsection (j)(2) requires a finding:

> [t]hat the prospective reclassification of the property is warranted by that change or error. Any finding of such a change or error and any finding that the prospective reclassification is warranted may be made only upon consideration of factors relating to the purposes of the zoning regulations and maps, including but not limited to all of the following: Population trends; availability and adequacy of present and proposed transportation facilities, water-supply facilities, sewerage, solid-waste-disposal facilities, schools, recreational facilities, and other public facilities, compatibility of uses generally allowable under the prospective classification with the present and projected development or character of the surrounding area; any pertinent recommendation of the planning board or office of planning and zoning; and consistency of the current and prospective classifications with the master plan, the county plan for sewerage and water-supply facilities, and the capital program.

With respect to the property that was reclassified in this case, there was an additional set of procedural requirements imposed on the opinion of the County Board of Appeals. Since 1988, most of the tract involved in this litigation has been designated as a "limited development area" within the Chesapeake Bay Critical Area. Subsection (j)(3) provides that any "reclassification pertaining to land within the Chesapeake Bay Critical Area is subject to" additional limitations. The additional limitation pertinent in this case is contained in subsection (j)(3)(b):

> *No reclassification may be granted unless the board has made written findings* that the proposed reclassification will:

1. Minimize adverse impacts on water quality that result from pollutants that are discharged from structures or conveyances or that have runoff from surrounding lands;

2. Conserve fish, wildlife, and plant habitat; and

3. Be consistent with established land use policies for development in the Chesapeake Bay Critical Area which accommodate growth and also address the fact that, even if pollution is controlled, the number, movement, and activities of persons in that area can create adverse environmental impacts. (Emphasis supplied.)

The opinion of the Board of Appeals abjectly failed to satisfy the requirements of either subsection (j)(2) or subsection (j)(3)(b). Indeed, the feeble argument that Beachwood makes in this regard is based on the single sentence at the end of the Board's opinion:

The Board has carefully reviewed and considered the evidence and testimony presented in these proceedings, and finds that the testimony presented by the Petitioner and, particularly, *the expert testimony given by Mr. Crozier with his supporting reasons, supports a finding of fact that the subject property was erroneously zoned by the County Council.* (Emphasis supplied.)

Its inadequacy to satisfy the Code provision is palpable. Quite aside from the almost cavalier attempt to finesse the requirement of precise and considered findings of fact by the casual incorporation of all of the testimony of Mr. Crozier into a brief allusion to it, it is transparent that even that attempted incorporation is offered only to support "a finding of fact that the subject property was erroneously zoned by the County Council." It does not even purport to deal with the additionally required companion finding that, even following a finding of error in the Comprehensive Plan, the reclassification itself was warranted. It does not, moreover, even remotely allude to the required findings of subsection (j)(3)(b) with respect to a reclassification in the Chesapeake Bay Critical Area.

In *People's Counsel v. Mockard,* this Court analyzed at length the requirements spelled out in subsection (j)(2) and

concluded that a zoning reclassification by the Baltimore County Board of Appeals must be reversed because of the failure of the Board's opinion to satisfy the requirements of the subsection. In that opinion, Judge Rosalyn Bell very explicitly set out:

> Under that provision, the Board must make two findings: 1) that there was error in the comprehensive zoning, and 2) that the prospective reclassification is warranted. Both of those findings may be made "only upon consideration of factors ... including, but not limited to, all of the following...."

73 Md.App. at 347, 533 A.2d 1344.

The appellees in that case, very much as Beachwood here, suggested that it would be enough to satisfy the subsection if the Board, in the course of listening to the evidence, could thereby be deemed to have "considered" each of the required factors. It argued that the subsection by no means requires specific findings on the record. We squarely rejected that argument:

> Appellees filed a cross-appeal, arguing that § 2–58.1(j)(2) does *not* require the Board to enter specific findings as to each factor. They claim that the Board is only required to "consider" the factors....
>
> [T]hey claim that the Baltimore County Board need only "consider" certain factors, hence the Board did not need to objectively deal with the factors. We do not agree with appellees' conclusion.

73 Md.App. at 348, 533 A.2d 1344 (Emphasis in original).

Judge Bell analyzed in detail why clear findings of fact are necessary when dealing with appeals from administrative agencies. She quoted from *United Steelworkers of America AFL–CIO, Local 2610 v. Bethlehem Steel Corp.*, 298 Md. 665, 679, 472 A.2d 62 (1984):

> "Judicial review of administrative action differs from appellate review of a trial court judgment. In the latter context the appellate court will search the record for evidence to support the judgment and will sustain the judg-

ment for a reason plainly appearing on the record whether or not the reason was expressly relied upon by the trial court. However, in judicial review of agency action, the court may not uphold the agency order unless it is sustainable on the agency's findings and for the reasons stated by the agency."

73 Md.App. at 348–49, 533 A.2d 1344.

Judge Bell pointed out that in dealing with administrative appeals, the appellate court may not supply factual findings which were not made by the administrative agency. It would only be when the findings of the Board of Appeals were uncontradicted and where only one conclusion could be reached that a lack of such findings would not warrant remand. *See also Ocean Hideaway Condominium Ass'n v. Boardwalk Plaza Venture,* 68 Md.App. 650, 664–65, 515 A.2d 485 (1986); *Gough v. Board of Zoning Appeals for Calvert County,* 21 Md.App. 697, 704, 321 A.2d 315 (1974).

It is not for us to search the record before the County Board of Appeals in an effort to construct a possible rationale that might support its zoning reclassification. Robert M. Anderson, 3 *American Law of Zoning* (3d ed. 1986), § 16.41 succinctly states the reason why administrative agencies are required to make express findings:

Given express findings, the court can determine whether the findings are supported by substantial evidence, and whether the findings warrant the decision of the board. If no findings are made, and if the court elects not to remand, its clumsy alternative is to *read* the record, *speculate* upon the portions which probably were believed by the board, *guess* at the conclusions drawn from credited portions, *construct a basis* for decision, and *try to determine* whether a decision thus arrived at should be sustained. In the process, the court is required to do much that is assigned to the board, and the latter becomes a relatively inefficient instrument for the construction of a record. (Emphasis supplied.)

In the absence of required findings by the Board, the conclusion of this Court in *Mockard* was clear:

Hence, we hold that "consideration of factors" requires an articulation of the findings as to each of the applicable factors contained in [§ 2–356(j)(2) ]. The Board must make such findings in *both* a finding of error in the comprehensive plan and in a decision that the reclassification was warranted.

73 Md.App. at 349, 533 A.2d 1344. (Emphasis in original).

We there rejected the finding of error in the comprehensive zoning because of the failure of the Board of Appeals to render an opinion in compliance with § 2–356(j). We held that the opinion of the Board was "conclusory in nature and lack[ed] sufficient indication of which, if any, factors the Board considered in making its determination." 73 Md.App. at 350, 533 A.2d 1344. It is not enough, moreover, for the findings of the Board to be implicit. We made the requirement for express and precise findings very clear:

As discussed earlier, in finding error or that a reclassification is warranted, the Board must considered factors, "including, *but not limited to*, all of the following...." Section 2–58.1(j)(2). This means that, in order to make either of those findings, the Board must *at least* articulate its findings as to the 13 identified factors.

*Id.* (Emphasis in original).

### *The Spectral Apparition of Contract Zoning*

 There hovers on the edges of this case, albeit only in the shadows, the almost spectral apparition of contract zoning. Because neither the comprehensive zoning of the County Council nor the zoning reclassification of the County Board of Appeals expressly contains any forbidden *quid pro quo,* we do not treat what is before us as an actual instance of contract zoning. *Somerset v. Montgomery County,* 229 Md. 42, 50–52, 181 A.2d 671 (1962); *Pressman v. Baltimore,* 222 Md. 330, 343–45, 160 A.2d 379 (1960). So strong, however, is the sense of the unseen presence that it ill behooves us to depart the scene without at least acknowledging the apparition.

To change the metaphor, Beachwood raises the weapon of contract zoning very gingerly. This is understandable, for it is, most assuredly, a two-edged sword. After suggesting that Baltimore County, through its Office of Planning and Zoning, sought to use the comprehensive zoning and reclassifying processes as a means to pressure Beachwood into financing an off-site traffic improvement, Beachwood, in its brief before us, noted the impropriety:

> Appellants ... may be correct in that the county's motivation and means may be improper. The comprehensive zoning process approach to this site to coerce improvements that are truly the responsibility of government was improper.

Whether the suggested contract zoning that permeates the atmosphere of this case was real or imaginary, proved or unproved, proper or improper, it is clear that the subject matter of the alleged zoning contract was an off-site traffic improvement to an intersection near the Beachwood property. Were the Beachwood property to be developed residentially, most of the residents would use, on a regular basis, the nearby intersection of Morse Road and North Point Boulevard. It is conceded by all parties that there is at that intersection an undesirable configuration that creates a potential traffic hazard.

It is not, however, a problem that would *per se* be *created* by more intensive traffic use nor one that would *per se* be *eliminated* by less intensive traffic use. It is a problem that would exist whether one car per day or 5,000 cars per day should use the intersection. It is described as a "sight-distance" problem with respect to vehicles moving onto Morse Road from North Point Boulevard and vehicles moving onto North Point Boulevard from Morse Road. Both suffer obstructions to their line of vision as they prepare to make the necessary turn.

Self-evidently, the more cars that pass through the intersection, the greater the likelihood that an accident may occur. Although the traffic problem is not the result of traffic volume,

an increase in traffic volume would quite obviously exacerbate the problem, just as a decrease in traffic volume would quite obviously mitigate it.

Nowhere in the majority opinion of the Board of Appeals is there an indication that its finding that the County Council's comprehensive zoning had been a mistake in any way hinged on the existence of the traffic hazard or its possible amelioration. Notwithstanding that silence on the subject in explaining the rationale for its decision, the majority opinion, in summarizing the testimony of the witnesses before it, was nonetheless very generous in its allusions to the traffic situation.

One key witness before the County Board was John J. Stamm, a civil engineer working with Beachwood in its projected development of the property. It was Mr. Stamm who estimated that the cost for the traffic improvement would be in the neighborhood of $125,000. It was through Mr. Stamm that there was introduced a January 29, 1993 letter from the Maryland State Highway Administration with respect to Beachwood's site plan for the property and with respect to the traffic problem. That letter included the following paragraph:

SHA currently has no plans for funding improvements to MD 151 within this area. The developer's representative indicated a willingness to fund the above improvements in previous meetings. However, since the developer does not require direct access onto MD 151, we must request that the county require the developer fund and construct these improvements as a condition of plan approval.

Another key witness before the County Board was Stephen Weber, the Chief of the Division of Traffic Operations for Baltimore County. After testifying with respect to the traffic hazard and the disinclination of the State to fund any improvement to the intersection, it was Mr. Weber, in a conversation with a representative of the County Planning Office, who suggested a possible way to persuade Beachwood to pay for the traffic improvement. Mr. Weber testified:

The issue is because [that] had been offsite improvement, *how could the county reasonably get those improvements from the developer?*

Sometimes [they] may be successful if the developer is willing to cooperate, but *there's no certainty that the county would be able to force the developer to do offsite improvements* to rectify the problem.

When I spoke with Ms. MacMillan, I said, well, *certainly, one very [roundabout] way that could possibly be done, to force the issue, would be to go ahead and recommend downzoning of the property* based on the current limitations; if they could come back to the cycle zoning process and certainly *they could submit a documented site plan showing how the traffic would be accommodated,* or what geometric improvements could be made to safely accommodate that additional development, and *that way those improvements could then be tied to the development plan* showing how, one, how the improvements would be able to support the proposed development.

*I'm not saying that's a good way of doing it, but it was certainly one method that could be done or used.* (Emphasis supplied.)

A third witness before the Board of Appeals was Jeffrey Long, a planner with the Baltimore County Office of Planning and Zoning. His testimony indicated that the positions taken by his office implemented the strategy suggested by Mr. Weber. The members of the planning staff and the Planning Board itself took various positions on the zoning of the Beachwood property, sometimes in favor of the comprehensive downsizing and at other times in favor of the requested reclassification. One question to Mr. Long was very point blank, "Would it be safe to say that the planning staff and planning board agreed to disagree?" He frankly responded, "Yes, I think that would be a fair statement to make." His position was to be against the proposed reclassification to D.R. 3.5 initially, but then to change positions once Beachwood had committed itself to funding the improvement to the off-site intersection:

Well, obviously, rezoning to D.R. 3.5 would result in increased trips. It would, you know, exacerbate any existing deficiency.

So we felt *it was essential to have the developer agree to make these improvements prior to any rezoning of the property.*

And that was accomplished through the filing of the documented site plan. (Emphasis supplied.)

One reason the allusions to contract zoning in this case have such a phantom-like quality is that neither the case law, here and abroad, nor the academic commentary seems to have a firm grip on exactly what is meant by the term "contract zoning" or by its doctrinal doppelganger, "conditional zoning." In the broadest of senses, both involve some sort of *understanding* between the governmental unit and the developer, whereby the doing of certain acts by the developer will result in favorable rezoning treatment by the governmental unit. Beyond that, the definitions begin to blur.

Some academic authorities treat "contract zoning" as the more generic phenomenon, with "conditional zoning" as a special instance thereof. Donald G. Hagman, *Urban Planning and Land Development Control Law* (1975), § 94 at 74–75. Others treat "conditional zoning" as the generic phenomenon, with "contract zoning" as the special instance. Robert M. Anderson, 2 *American Law of Zoning* (3d ed. 1986), §§ 9.20 and 9.21 at 159–72. Yet other authorities treat the two terms as closely-related but distinct phenomena, with "contract zoning" being beyond the pale of legality but with "conditional zoning" slowly emerging therefrom into general acceptance. Arden H. Rathkopf and Daren A. Rathkopf, 2 *The Law of Zoning and Planning,* § 29A.03 at 29A–22 through 29A–30.

The Maryland cases have treated "contract zoning" narrowly as a situation wherein the developer of property enters into an express and legally binding contract with the ultimate zoning authority. In such circumstances, the Maryland cases have not hesitated to hold such contract zoning to be null and void. Part of the reason why the governmental authority may not enter into such a contract is because the governmental

unit may not bargain away its future use of the police power. Maryland's treatment of contract zoning is consistent with the definition of "illegal contract zoning" set out in Arden H. Rathkopf and Daren A. Rathkopf, 2 *The Law of Zoning and Planning,* § 29A.03[b] at 29A–25:

> Illegal contract rezoning is said to involve the process by which a local government enters into an agreement with a developer whereby the government exacts a performance or promise from the developer in exchange for its agreement to rezone the property. The developer may agree to restrict development of the property, make certain improvements, dedicate a portion of land to the municipality, or make payments to the municipality. Numerous state court decisions have held such express or implied agreements invalid as illegal contract zoning. (Footnotes omitted.)

The first Maryland case to find that illegal contract zoning had occurred was *Baylis v. City of Baltimore,* 219 Md. 164, 148 A.2d 429 (1959). The vocabulary was still in a state of flux but the decision was clear. The Baltimore City Council, the repository of ultimate zoning authority, granted a zoning reclassification to a property owner, conditioned on a binding agreement by the property owner to use the benefit of the reclassification only for the purpose of building a funeral home. The City Council Ordinance that granted the reclassification expressly incorporated the agreement by the property owner that was the consideration for the reclassification:

> In its final form, the Ordinance made the reclassification conditional upon the execution of an agreement, set out in the Ordinance, between the owners and the City, and the recording of such agreement among the Land Records of Baltimore City, so as to be binding upon the property owners, their successors, heirs and assigns.
>
> The agreement provided that, in consideration of the rezoning, the owners would develop and maintain the property as a funeral home only . . .

219 Md. at 166, 148 A.2d 429.

Without using the term "contract zoning" *per se,* the Court of Appeals held that the zoning was illegal. Among its

reasons was the fact that "the resulting 'contract' is nugatory because a municipality is not able to make agreements which inhibit its police powers." 219 Md. at 170, 148 A.2d 429.

In stark contrast to *Baylis v. City of Baltimore* is *Pressman v. City of Baltimore*, 222 Md. 330, 160 A.2d 379 (1960). Whereas in *Baylis* the Baltimore City Council had entered into an express zoning contract, in *Pressman* it did not. The property owners, Food Fair and Stewart's, did, however, enter into a formal and undisputed Agreement with the Baltimore City Planning Commission. The property owners made certain commitments "in consideration of the Planning Commission's approval of the rezoning." Pursuant to that Agreement, the Planning Commission recommended to the City Council that the rezoning be granted. The rezoning was subsequently granted.

In declining to hold that the Agreement constituted illegal contract zoning, the Court of Appeals restricted the application of the ban on contract zoning to those instances wherein the legislative body itself, as opposed to some other governmental agency, is a party to the illegal contract. Chief Judge Brune pointed out for the Court of Appeals:

> Whatever the reasons for the Council's omission of reference to the Agreement may have been, it is clear that in this case, unlike *Baylis*, the legislative body has not itself sought to impose conditions and has certainly not stated that its own action is dependent upon compliance with any conditions.

222 Md. at 343, 160 A.2d 379 (Citations omitted).

The Court of Appeals also distinguished the Planning Commission, which possessed only the power to make recommendations, from the City Council, which alone possessed the power to pass a zoning ordinance:

> We thus have a situation in which the City Council was not bound by the recommendations of the Planning Commission, in which that Commission sought to impose conditions that it was not authorized to exact and that are therefore invalid, and in which the Council did not under-

take or attempt to incorporate the invalid conditions in its
rezoning ordinances and did not even refer to them.

222 Md. at 344, 160 A.2d 379.

In *Beshore v. Town of Bel Air,* 237 Md. 398, 206 A.2d 678
(1965), the Court of Appeals also held that no illegal contract
zoning had occurred. In that case, however, it was not
because the alleged contract had not been struck between the
property owner and the arm of government empowered to
carry out the ultimate rezoning. The Town Commissioners of
Bel Air were so empowered. What was missing in *Beshore*
was definitive evidence that the Bel Air Town Commissioners
had entered into such an illegal zoning contract. The evidence
put forth by the protestants was circumstantial, based essen-
tially on the principle of *post hoc, ergo propter hoc.* The
Court of Appeals commented on the speculative nature of the
evidence:

> There is no evidence supporting the appellants' assertion
> that the property owners and the town of Bel Air entered
> into any agreement in regard to the zoning of their respec-
> tive properties. The most that can be extracted from the
> record is that the property owners let their desires in
> regard to zoning be known and that the town fulfilled these
> desires. Ordinance No. 157 makes no reference to any
> agreement and cannot be termed special interest legislation
> since it applies to any property which is proposed to be
> annexed. Nor does Resolution No. 20 make any reference
> to any agreement, or state any conditions to the annexation
> or zoning.

237 Md. at 415–16, 206 A.2d 678.

The Court of Appeals attached great significance to the fact
that the zoning act in question contained no reference to the
allegedly illegal agreement:

> We think the case before us presents no problem of
> zoning by contract, since the legislative body of Bel Air has
> made no provision in Ordinance No. 157 or Resolution No.

conditioning their action in zoning on annexation upon any acts of the property owners.

237 Md. at 416, 206 A.2d 678.

In the case before us, Beachwood argues that the Baltimore County Council, in its 1992 comprehensive zoning, somehow engaged in illegal contract zoning. What pertinence that would have, even if true, to the limited decision before the County Board of Appeals is not clear. More to the point, however, is the fact that, just as in *Pressman* and just as in *Beshore*, there was no reference in the 1992 comprehensive zoning act to any agreement with Beachwood or to the fact that the 1992 zoning was in any way related to any past or future commitment by Beachwood. The evidence of contract zoning is even more bereft than was such evidence in *Beshore*, which was found to have been only speculative.

The point that Beachwood seems to be trying to make is that the Baltimore County Planning Board brought pressure to bear on Beachwood, thereby forcing Beachwood to enter into an unlawful zoning contract with the Planning Board. The contract would have been a favorable zoning recommendation by the Planning Board in consideration of a $125,000 commitment by Beachwood to improve the intersection. Where Beachwood seeks to go with the argument is by no means clear, especially in the light of *Greenbelt v. Bresler*, 248 Md. 210, 236 A.2d 1 (1967). The situation of the Baltimore County Planning Board in this case is indistinguishable from the situation of the City of Greenbelt in that case. In *Bresler*, the ultimate zoning authority resided in the Prince George's County Council, as in this case it resided in the Baltimore County Council. In that case, the Prince George's County Council was required, before engaging in any reclassification of its zoning, to submit the proposed change "to the governing body of the municipality [the City of Greenbelt] for its recommendation." 248 Md. at 215, 236 A.2d 1. Such a recommendation, however, was only of "an advisory nature ... and not binding on the [County] Council." *Id.*

In the *Bresler* case, the Court of Appeals held that the City of Greenbelt had entered into a binding contract with the Breslers. "As an inducement to obtaining favorable recommendation from the City, the Breslers entered into two agreements." 248 Md. at 212, 236 A.2d 1. In one of those agreements, the Breslers entered into a sealed declaration of covenants and recorded them among the Land Records. In the second agreement, the Breslers agreed to donate 3.3 acres of land to the City of Greenbelt for use as a park and recreational area. "This agreement was expressly conditioned upon the favorable granting of the requested rezoning." 248 Md. at 213, 236 A.2d 1. Pursuant to the agreements, the City of Greenbelt forwarded its favorable recommendation to the Prince George's County Council, which, in turn, granted the Bresler's rezoning application. The Breslers subsequently argued that the agreements were null and void as an instance of illegal contract zoning. The Court of Appeals thoroughly reviewed the case law dealing with illegal contract zoning and pointed out that contract zoning only takes place when the contract is with the ultimate zoning authority and not with some other governmental entity that is only empowered to make recommendations:

> However all of the foregoing cases involve a contract with the deciding authority, the agency which had final control over the granting or denial of the requested zoning reclassification. We think there is a significant distinction between those cases where the contract is made between the developer and the zoning authority, and those cases involving a contract entered into in good faith between the developer and a municipality which does not have control over the classification and whose authority is limited to recommendation.

248 Md. at 215–216, 236 A.2d 1.

A similar result was reached in *Funger v. Town of Somerset,* 249 Md. 311, 239 A.2d 748 (1968). The Court of Appeals agreed that a contact had been entered into by the property owners and the Town of Somerset. The Town of Somerset agreed to recommend to the Montgomery County Council the

rezoning sought by the property owners. The property owners, in return, made commitments to the Town of Somerset. Significantly, however, the contract was only made with a governmental entity with the power to pass on a recommendation and not with a governmental entity empowered to enact the rezoning. The Court of Appeals held, citing *Greenbelt v. Bresler*, "This agreement was valid and was not contract zoning." 249 Md. at 328, 239 A.2d 748.

Because it is the only form of suspect zoning charged by Beachwood in this case, we have confined our analysis to contract zoning specifically and not to conditional zoning generally, a full analysis of which must abide some future occasion. *See,* however, *Wakefield v. Kraft,* 202 Md. 136, 96 A.2d 27 (1953); *Rose v. Paape,* 221 Md. 369, 376–77, 157 A.2d 618 (1960); *Carole Highlands Citizens Assoc. v. Prince Georges County,* 222 Md. 44, 158 A.2d 663 (1960); *Montgomery County v. Nat'l Capital Realty,* 267 Md. 364, 373–75, 297 A.2d 675 (1972); *Bd. of County Commr's v. Holtz,* 65 Md.App. 574, 501 A.2d 489 (1985); *People's Counsel v. Mockard,* 73 Md.App. 340, 343–47, 533 A.2d 1344 (1987).

Whatever may have been the twistings and turnings of the Planning Board, there is no suggestion, let alone compelling evidence, and certainly no suggestion in the majority opinion of the Board of Appeals that the County Council, in its comprehensive zoning of 1992, was implicated in those twistings and turnings. There was no evidence that the County Council was involved in any scheming and plotting, let alone any contract zoning, to procure funding for the desired highway improvement. For all of the reasons discussed, the allegation of improper contract zoning is a non-issue in this case.

Were the ban on contract zoning far broader in its sweep, as seems to be urged by Beachwood, the allegation of contract zoning in this case would, indeed, be a two-edged sword. If we were to speculate that it was not the Planning Board specifically but Baltimore County generally, operating through all of its governmental arms, that sought to enter into a

contractual relationship with Beachwood, we might have an instance of contract zoning far more subtle and far more devious than any that we have thus far encountered in the case law. Ordinarily, a disfavored zoning contract consists of a single governmental agency offering favorable zoning in return for a commitment by the property owner.

The speculative scheme in this case, by contrast, would involve two separate actions by the County government undertaken by two different arms of that government. The first would consist of the County Council's taking away of preexisting favorable zoning. The second would then consist of the Board of Appeals's offering to give it back, totally or nearly, in return for a $125,000 contribution to highway improvement. Ironically, Beachwood charges the County Council with engaging in forbidden contract zoning even as the appellants charge the Board of Appeals and Beachwood with violating the same taboo.

If the plot were as widespread as the appellants and the appellee, in combination, suggest, Beachwood would find itself on the horns of a dilemma. If the comprehensive zoning of the County Council could be faulted for having set up an illegal contract zoning "deal," then the reclassification by the County Board of Appeals could with equal fervor be faulted for having consummated that "deal." Mercifully, this is a non-issue.

*JUDGMENT REVERSED; COSTS TO BE PAID BY APPELLEE.*

Concurring opinion by CATHELL, J.

CATHELL, Judge, concurring.

I agree with that portion of the opinion that holds that the Board, in its reclassification, failed to make sufficient findings required by the Chesapeake Bay Critical Area law. While the case law as to findings runs the gauntlet from "complete and comprehensive" to "findings sufficient to apprise one of the reasons for an administrative decision," what occurred here, in respect to the additional requirements of the "critical area"

law, fails to meet any "findings of fact conclusions of law" standard. Thus, while I do not *necessarily* agree with all of the reasoning of the balance of the opinion nor with *its* interpretations of the late Judge Davidson's triad of cases, *i.e.,* *Coppolino, Boyce, Dorsey,* I concur with the result reached. I also would reverse.