704 A.2d 483

**PEOPLE'S COUNSEL FOR BALTIMORE COUNTY, et al.**

v.

**The PROSSER COMPANY, INC.**

No. 603, Sept. Term, 1997.

Court of Special Appeals of Maryland.

Jan. 12, 1998.

152

154

Peter Max Zimmerman (Carole S. Demilio, on the brief), Towson, for appellant, People's Counsel.

Michael P. Tanczyn, Towson, on the brief, for appellants, Glen Arm and Reier.

G. Scott Barhight (Julie D. Wright and Whiteford, Taylor & Preston, L.L.P., on the brief), Towson, for appellee.

Before HARRELL, EYLER and KENNEY, JJ.

EYLER, Judge.

■ This appeal is from a judgment of the Circuit Court for Baltimore County affirming a decision by the County Board of Appeals (Board) in September, 1996 reclassifying, through the grant of a piecemeal application, certain property (the Property) from residential office/commercial rural (R.O./C.R.) and rural residential(R.C.5) to light manufacturing (M.L.). People's Counsel for Baltimore County,[1] Glen Arm Community Association, and T. Michael Reier, its president, appellants, inquire whether the subsequent countywide comprehensive rezoning by the County Council later in 1996, which retained the R.O./C.R. and R.C.5 classifications, superseded the Board's action. Appellants also inquire (1) whether the lack of planned water and sewer to the area in question requires reversal, (2) whether the Board's decision is unlawful because it violated its own rules, and (3) whether the evidence is legally sufficient to sustain the finding of mistake and the finding that the reclassification to M.L. was warranted. Appellee, The Prosser Company, Inc., inquires whether appellants, by virtue of the law of the case doctrine, are precluded from raising the issue relating to the lack of planned water and sewer and the issue relating to the legal sufficiency of the evidence to sustain the finding of mistake. We answer appellee's inquiry in the negative, reach all of appellant's issues, and answer the first two in the negative and the last one in the affirmative.

## Facts

The Property in question consists of 5.2 acres and is located at the northeast corner of Glen Arm Road and Long Green Pike in Baltimore County. It was owned by Grumman Corporation for several years. The Property, located adjacent to Grumman's manufacturing facility, had three houses on it which were leased by Grumman Corporation at various times.

---

1. People's Counsel is a party in interest. *See* Baltimore County Charter, § 524.1; *People's Counsel v. Maryland Marine Mfg. Co.*, 316 Md. 491, 496–97, 560 A.2d 32 (1989).

On July 15, 1992, appellee acquired the property and later razed the houses. There are businesses located on the west side of Long Green Pike and on Glen Arm Road, including appellee's existing facility located on the northwest corner of the two intersecting roads. The uses are residential and agricultural on the southeast side of the intersection.

The County Council engages in a countywide comprehensive zoning map process every four years. *See* Baltimore County Code § 26–123. As a result of the adoption of the 1992 comprehensive rezoning, 1.9 acres of the Property were zoned R.O./C.R. and 3.3 acres were zoned R.C.5. The C.R. designation was added as part of that zoning process on the recommendation of the Office of Planning & Zoning staff.[2]

On August 31, 1993, appellee filed a petition with the Board to reclassify the Property from R.O./C.R. and R.C.5 to M.L., contending that there was a mistake in the 1992 comprehensive zoning map process. Appellee submitted a site plan showing its proposed use of the Property, specifically, the relocation of two of its subsidiaries from another site.

The Planning Board supported the requested change because it was consistent with the 1990 Master Plan and because the M.L. zone already abutted the Property on three sides. The Board explained the recommendation to add the C.R. designation in 1992 by stating that it was done as a matter of course and that the Office of Planning and Zoning staff review of individual properties had not been thorough.

The Board held a hearing on April 6, June 16, July 19, and September 20, and by majority vote (two to one) on December 13, 1994, granted the rezoning. The Board found that the proposed development was consistent with adjacent land uses and that there was no practical use for the parcel under its

---

2. In Baltimore County, zones are "intended to provide broad regulation of the use and manner of use of land." Baltimore County Zoning Regulations § 100.1A.1. Districts are "intended to provide greater refinement in land-use regulation ... [and] are superimposed upon zones." Balto. Co. Zoning Regulations § 100.1B.1. The designations R.O. and R.C.5 are zone designations and C.R. is a district designation.

existing zoning. It also found that the proposed use was consistent with the 1990 Master Plan and with the 1992 Proposed Land Use Map (an amendment to the 1990 Master Plan). Consequently, the Board found that there had been a mistake in the 1992 comprehensive zoning.

At the time of the Board hearing, there were three residences on the Property, each with a failing septic system. The Board found that the County Council could not have known in 1992 that appellee would combine what were originally three separate parcels to form the 5.2 acre Property and could not have known of the failing septic systems. The Board stated that the parcels could only be used if the three septic systems were destroyed, and that the proposed use would remove the health hazard. Additionally, the Board found that the C.R. overlay was applied as a matter of course during the 1992 comprehensive rezoning and that the Office of Planning & Zoning staff had misled the County Council in its advice to apply it to the Property.[3]

---

3. The majority opinion stated in part:

After due consideration of all of this lengthy testimony and evidence, several basic facts present themselves to this Board. Mr. Prosser has purchased three small parcels and combined them into one 5–acre parcel for which he has produced a documented site plan that, in the opinion of this Board, is in keeping with the adjacent uses. Under their present zoning designations, there is little or no practical use for the three properties whatsoever, since no matter what the use proposed or undertaken, the septic systems cannot comply with Baltimore County regulations.

The testimony of Mr. Long [staff member, Office of Planning & Zoning] is most compelling in this case. By virtue of the fact that the OPZ staff comments related to the applicable CR designation issue were applied in error "as a matter of course" without due consideration for each property affected by the issue, the OPZ staff unknowingly misled the Council in its advice to apply the CR designation on the instant site. The notion that a visit to each site by council Members mitigates unintentional misinformation and therefore erroneous conclusions by the Council is not persuasive. The Council relies upon information from several sources when considering issues such as the instant case. If the Council is uninformed or misinformed about conditions which would lead them to a conclusion, then the Council has erred if it does not consider all the salient facts which actually exist. Mr. Long and the OPZ staff are to be com-

Appellants filed a petition for judicial review in the Circuit Court for Baltimore County. Appellants challenged the legal sufficiency of the evidence to support the Board's finding of mistake but also argued that the Board lacked jurisdiction to consider the petition for reclassification. In support of the latter argument, appellants relied on Baltimore County Zoning Regulations § 1A00.3.A.1.a, applicable to rezoning petitions in all R.C. classifications, which provides:

1. No petition to reclassify an R.C. zone or portion thereof as other than an R.C. zone may be accepted for filing by the Zoning Commissioner unless—

a. The Capital Program, duly adopted Baltimore County master or comprehensive plans, and the "county plan" required under Subtitle 5 of Title 9 in the Environment Article of the Annotated Code of Maryland 1987, as amended, show that the property under petition is to be serviced by public sewerage and water supply systems within TWO years after the date the petition is submitted.

According to appellants, there was no evidence before the Board demonstrating compliance with that section.

---

mended for coming forth in the difficult position of exposing the error.

The Board will find as a fact that the zoning afforded these three parcels is in fact in error, and that the only way the parcels can be used is if the three septic systems are destroyed, and the one area that appears to be usable is incorporated into the requested zoning to permit the industrial use. It is virtually impossible for the County Council to have known of or to have foreseen these obvious developments, and to have the zoning afforded the three parcels is in fact in error. Based upon the fact that the proposed use under the documented site plan complies with the Master Plan and complies with the 1992 Proposed Land Use Map, and that the proposed use will remove the health hazard produced with the three failing septic systems, we find that the requested zoning is the proper zoning for this site as evidenced by the documented site plan.

The dissenting member found insufficient evidence of a legal mistake in zoning. The dissenting opinion pointed out that the Council considered the Property in 1992 and added the C.R. designation to the parcel zoned R.O. At that time, the Council knew that the same owner owned all of the Property and that the Master Plan called for industrial use.

In an opinion and order dated December 7, 1995, the circuit court found the requirement in the zoning regulations that public water and sewer be planned in the area within two years to be jurisdictional in nature. Because the County Charter provides that the Board "shall have original and exclusive jurisdiction over all petitions for reclassification," *see* Baltimore Co. Charter § 602(e), the circuit court held that the zoning regulation in question conflicted with the Charter and was invalid. Consequently, the circuit court concluded that the Board had jurisdiction.

The circuit court also found that there was sufficient evidence to support the Board's finding that mistake had occurred and affirmed that portion of the Board's decision.

The circuit court stated in part:

At the time of the comprehensive zoning, there is evidence that the lots were presented to the Council as three individual lots. The fact that the lots were owned by a single owner does not affect this finding. Each lot currently has a non-functioning septic system. Only one small area on one of the lots can be developed for septic use. Thus, the three lots must be consolidated for development purposes. The Council could not have known about these circumstances in 1992 at the time of the comprehensive zoning because they arose after January 1992—the last date on which an issue could have been raised pertaining to the 1992 Comprehensive Zoning Map Process. The failure of the septic systems requires that the three lots be developed in a consolidated fashion. The Council, however, treated the lots as three individual lots during the 1992 Comprehensive Zoning Map Process. Thus, as the Board of Appeals determined, the zoning afforded the lots was in error.

(Footnotes omitted).

Although the circuit court affirmed the Board's jurisdiction and its finding of mistake, it held that the Board's findings were insufficient to determine if the reclassification to the new M.L. zone was warranted under Balto. Co.Code, § 2–356(j),

and specifically subsection (j)(2),[4] which sets forth findings required to be made by the Board prior to a reclassification. The circuit court remanded the case to the Board for further consideration of that issue.

Appellants filed a notice of appeal to this Court in January 1996, but after filing prehearing information reports pursuant to Rule 8–205, voluntarily dismissed the appeal in April 1996. The case was then remanded to the Board pursuant to the circuit court's order. Two of the three original Board members had resigned by that time. The remaining member issued an opinion granting the rezoning but subsequently rescinded the opinion after his legal right to do so was challenged by appellants. A new three-member panel was formed, which included the carry-over member from the original panel who had voted to approve the application previously. The new panel, after reviewing the transcript of the 1994 hearing, denied appellants' request to present new evidence. The Board, through the new panel, held public deliberations on June 5 and July 3 and, in an opinion dated September 19, 1996, determined that the reclassification was warranted and granted the rezoning.

In that opinion, the Board noted that the Office of Planning & Zoning staff and the Planning Board agreed that the requested reclassification was appropriate and consistent with

---

4. *Balto. County Code* Section 2–356(j)(2) provides:

That the prospective reclassification of the property is warranted by that change or error. Any finding of such a change or error and any finding that the prospective reclassification is warranted may be made only upon consideration of factors relating to the purposes of the zoning regulations and maps, including, but not limited to, all of the following: Population trends; availability and adequacy of present and proposed transportation facilities, water-supply facilities, sewerage, solid-waste-disposal facilities, schools, recreational facilities, and other public facilities, compatibility of uses generally allowable under the prospective classification with the present and projected development or character of the surrounding area; any pertinent recommendation of the planning board or office of planning and zoning; and consistency of the current and prospective classifications with the master plan, the county plan for sewerage and water-supply facilities, and the capital program.

the Master Plan in that the Property was noted as an industrial development area in the Master Plan. The Board found, in part, as follows:

The Board also notes that the Petitioner brought a documented site plan and, with it, the restrictions associated with a documented site plan, which serves to provide safeguards against uses not specifically part of that documented plan. Mr. Jeffrey Long, of the former Office of Planning and Zoning, testified that the staff conclusion in review of the instant case is that the request was appropriate and was consistent with the Master Plan. The Planning Board agreed, subject to a revision with regard to the Landmarks Preservation Commission's concerns about the three existing houses on the instant site. Mr. Long specifically noted that the Glen Arm area is noted as an industrial development area as part of the Master Plan. At the time of the Office of Planning and Zoning review, the staff position was to eliminate proposed Building "B," in deference to septic issues raised by the Department of Environmental Protection & Resource Management (DEPRM) in its discussions with the Petitioner. Mr. Long testified that if the septic issue is remediated, then the staff has no problem with proposed Building "B."

Ms. Ruth Macari, Chairman of the Landmarks Preservation Commission, testified that none of the three existing buildings on the instant site is on the Baltimore County Landmarks Preservation List, further stating that the property owner has the right to raze the existing structures. In light of the documented site plan, the known failing existing septic systems, and the improvements necessary to proceed in mitigating the existing septic problems for the new structures, the Board finds that adverse impacts to water supply facilities are mitigated by the proposed reclassification; that sewerage would be improved by the proposed reclassification; and that the general welfare of the community concerning environmental issues would be enhanced by the proposed reclassification and its resultant improvements on the property.

Mr. George Gavrelis, in his testimony regarding whether the proposed zoning reclassification is warranted, testified that the documented site plan is within the spirit and intent of the *Baltimore County Zoning Regulations* as the plan is in keeping with the Baltimore County Comprehensive Plans. He testified that there would be no impact on existing transportation facilities, utilities, and schools. Concerning solid waste disposal, the documented plan provides for a manufacturing enterprise; therefore, private solid waste disposal services would be employed, and there would be no additional burden on County services. He indicated that the proposed classification is compatible with the surrounding, historically manufacturing area and is in strict accordance with existing and prospective classifications with the Master Plan, the County plan for sewerage and water supply facilities, and that the proposed reclassification has no impact to the capital program. The Board is persuaded by the testimony of Mr. Gavrelis concerning these factors.

The Board notes that The Prosser Company is but part of three affiliated companies: The Amereihn Company, a miscellaneous metals manufacturing company located on Overton Avenue at Belair Road and Interstate 695 in Baltimore County, as well as El–Tex, an electrical control panel manufacturing facility. The expansion of Belair Road at Overton Avenue, as well as constraints at the El–Tex facility in Baltimore City, has the Petitioner in a position of not being able to expand to meet his company's needs and the needs of his clients. Mr. Peter Swanson, of the Baltimore County Department of Economic Development (DED), testified that DED supported the Petition, citing improved efficiency of the Petitioner, consistency with the Master Plan for the area, additional employment in Baltimore County, and an increased tax base.

Mr. Patrick Ford, an expert in land planning, analyzed the zoning in the Glen Arm area, and found the area to be predominantly business and industrial in use.

The Board also notes that the Petition was supported by numerous residents of the area, despite opposition by a few,

as evidenced by the myriad of non-form letters of support. In finding the testimony of Messrs. Long, Gavrelis, Swanson, and Ford persuasive, this Board finds that the proposed reclassification, as limited in the documented site plan, is indeed warranted, and will so order.

Appellants filed a petition for judicial review of the second Board decision in the Circuit Court for Baltimore County. Prior to a hearing in that court, the County Council completed its 1996 comprehensive zoning map process, and in the new zoning map adopted on October 15, 1996, the Property retained its zoning classification as R.O./C.R. and R.C.5.

In Baltimore County during the quadrennial comprehensive zoning map process, the Planning Board, after complying with prescribed procedure, recommends a comprehensively revised version of the zoning map to the County Council. The map identifies as a separate "issue" each area or parcel considered for a change in zoning by the Planning Board. Balto. Co.Code § 26–123(d). Issues may be raised by the public, the Planning Board, or the County Council. There is a deadline applicable to each of the above entities for raising issues. Balto. Co. Code § 26–123(e).[5]

---

**5.** That section provides:

(e) Beginning August 1, 1987, and August 1st of every fourth year thereafter and ending January 15, 1988, and January 15th of every fourth year thereafter, the following time periods for raising issues during the comprehensive zoning map process are hereby established:

| | *Beginning* | *Ending* |
|---|---|---|
| Period 1. Public and planning director | August 1 | October 31 |
| Period 2. Planning board and planning director | November 1 | November 30 |
| Period 3. County council | December 1 | January 15 |

During period 2, only members of the planning board and planning director may raise issues, and during period 3, only members of the county council may raise issues. No new issue may be raised by anyone after January 15th. The term "issue" or "issues" refers to a tract or parcel of land proposed for a change in zone or district classification.

In the 1996 comprehensive map review process, the Property was the subject of issues 6–001 and 6–017. The only information which has been supplied to us pertaining to those issues is as follows:

Baltimore County 1996 Comprehensive Zoning Map Issues

| Issue Number | Owner, Petitioner | Location | Existing Zoning and Acres | Requested Zoning and Acres | Planning Board Recommendations | County Council Decisions | Comments |
|---|---|---|---|---|---|---|---|
| 6-001 | James J. Prosser | Northeast side of Long Green Pike and Glen Arm Road. 12107 & 12109 Long Green Pike and 5328 Glen Arm Road. | RC5 3.300 RO CR 1.900 Total 5.200 | ML 5.200 Total 5.200 | RC5 3.300 RO CR 1.900 Total 5.200 | RC5 3.900 RO CR 1.300 Total 5.200 | II-3, CR-94-132. See Issue 6-017 and 6-018. Board of Appeals approved 9/19/96. |

| Issue Number | Owner, Petitioner | Location | Existing Zoning and Acres | Requested Zoning and Acres | Planning Board Recommendations | County Council Decisions | Comments |
|---|---|---|---|---|---|---|---|
| 6-017 | Long Green, Kingsville, Glen Arm Impr. Assoc | Northeast corner of Long Green Pike and Glen Arm Road. | RC5 3.300 RC CP 1.900 Total 5.350 | RC2 5.200 Total 5.200 | RC5 3.300 RO CR 1.900 Total 5.200 | RC5 3.300 PO CR 1.950 Total 5.250 | See Issue 6-001 and 6-018 |
| 6-018 | Long Green, Kingsville, Glen Arm Impr. Assoc | East and west sides of Long Green Pike, 500 north of Glen Arm Road. | ML 47.000 Total 47.000 | RC2 47.000 Total 47.005 | ML 47.000 Total 47.000 | RC2 10.000 ML 37.300 Total 47.300 | See Issue 6-001 and 6-017 Overlay adopted. |

The County Council adopted the zoning map in accordance with Baltimore Co. Code § 26–124. The classification retained was in accordance with the Planning Board's recommendations with respect to issues 6–001 and 6–017, as reflected in the issue file reproduced above.[6]

Appellants, in the circuit court, moved to dismiss the appeal on the ground that the case was moot because the Council's action superseded the Board's action. The motion was denied by the circuit court. In an order dated March 7, 1997, the circuit court affirmed the Board's opinion, holding in relevant part that (1) the reclassification of the Property by the Board was not affected by the 1996 comprehensive zoning, (2) the first circuit court opinion constituted the law of the case and

---

**6.** Apparently, the County Council did not follow the Planning Board's recommendation with respect to issue 6–018, a property located north of the Property in question.

was binding on the parties, (3) alternatively, if the first opinion were not the law of the case, it was not in error, (4) that the Board's second opinion was not unlawful for failure to hold a *de novo* hearing, and (5) the evidence was legally sufficient to sustain the finding that the new zoning classification was warranted.

### Questions Presented

As rephrased by us, appellants raise the following questions:

1. Was the Board's decision superseded by the County Council's approval of the 1996 zoning map?

2. Does the lack of planned public water and sewer service to the area in which the Property is located require reversal of the Board's decision?

3. Is the evidence legally sufficient to sustain the finding of mistake?

4. Was the Board's failure to hold an evidentiary hearing on remand unlawful?

5. Is the evidence legally sufficient to sustain reclassification of the Property to an M.L. zone?

Appellee raises the following question:

Are the appellants precluded from raising issues 2 and 3 because they were not pursued in the first appeal to this Court and not decided in the second Board decision or the second circuit court decision?

### Standard of Review

■ As we stated recently in *Colao v. Prince George's County,* 109 Md.App. 431, 675 A.2d 148, *aff'd,* 346 Md. 342, 697 A.2d 96 (1997), there are two general standards of review of a decision of a zoning board:

In regard to findings of fact, the trial court cannot substitute its judgment for that of the agency and must accept the agency's conclusions if they are based on substantial evidence and if reasoning minds could reach the same conclu-

sion based on the record; when reviewing findings of law, however, no such deference is given the agency's conclusion. *Id.* at 458, 675 A.2d 148 (quoting *Columbia Road Citizens' Assoc. v. Montgomery County*, 98 Md.App. 695, 635 A.2d 30 (1994)). *See also Liberty Nursing v. Department*, 330 Md. 433, 442–43, 624 A.2d 941 (1993)(discussing administrative review generally); *Caucus v. Maryland Securities*, 320 Md. 313, 323–24, 577 A.2d 783 (1990)(same).

## Discussion

### I.

As mentioned above, every four years Baltimore County performs a comprehensive review of its zoning map. Baltimore County Code §§ 26–122 to 26–125. During the review process, a property owner, Office of Planning & Zoning staff, Planning Board members, the County Council, or citizens at large may request zoning changes. All petitions filed are assigned an issue number. After public hearings, the County Council votes on each issue, and when they are all resolved, it adopts a new comprehensive zoning map. Merely because a property owner or other non-governmental entity does not file a timely issue does not mean necessarily that a particular property is beyond the reach of the comprehensive rezoning process.

In 1991, the Office of Planning & Zoning identified 2.3 acres of the Property zoned R.O. as an issue. As also mentioned previously, the C.R. designation was added and was approved by the County Council as part of the 1992 comprehensive zoning map process. Joseph Prosser, president of appellee, testified at the 1994 hearing before the Board that he did not participate in that process because he was unaware of it when he negotiated for and purchased the Property in 1992.

In the time period between each comprehensive zoning map process, the Board has the power to change the zoning classification of property. Baltimore County Code § 2–356. Section 2–356 effectively incorporates the so-called mistake or change rule. Section 2–356(j)(1) requires:

(j) *Findings prior to reclassification.* Before any property is reclassified pursuant to this section, the board of appeals must find:

(1) That, except as limited by the terms of subsection (j)(3) of this section, there has occurred a substantial change in the character of the neighborhood in which the property is located since the property was last classified or that the last classification of the property was established in error.

*See Coppolino v. County Board of Appeals,* 23 Md.App. 358, 328 A.2d 55 (1974).

Additionally, § 2–356(j)(2) provides that the Board must find "that the prospective reclassification of the property is warranted by that change or error." It further requires that the prospective reclassification may be made only upon consideration of certain enumerated factors. *See* § 2–356(j)(2) at p. 8, n. 4.

A petition for reclassification in zoning may be filed with or without documentation relating to the proposed use of the property. Section 2–356(*l*). If such documentation (usually a site plan and/or architectural elevations) is filed and the request is granted, the property may be developed only in accordance with the plan included within that documentation. If it is not so developed within three years from the date of the final order granting the petition, the zoning classification reverts to the previous classification. Section 2–356(n). If a petitioner submits a site plan, a mistake/change and the warrant for the requested zone must still be shown before a reclassification will be granted. A reclassification conditioned on documentation under § 2–356(*l*) by the Board is specifically exempted, *see* § 2–356(n), from the uniformity requirement contained in Baltimore County Code § 26–122.[7]

---

**7.** Section 26–122 provides that regulations governing the erection, construction, reconstruction, alteration, repair, and use of building structures and land "shall be uniform for each class or kind of building or structure throughout each district, division, or zone. . . ."

This rezoning subject to documentation procedure, in the nature of conditional zoning, is not attacked by the parties herein as being unlawful. A reclassification based on a specific site plan has been discussed by this Court, *see People's Counsel v. Mockard*, 73 Md.App. 340, 533 A.2d 1344 (1987), but the issue of its validity has never been squarely adjudicated. Because the issue is not before us, we assume, without deciding, that it is valid.

Appellants assert that the provision for site plan rezoning was not intended to subvert comprehensive rezoning. They argue that an appellate court applies the law existing as of the time of its review, absent interference with vested rights or absent legislative intent to the contrary. *See Enviro–Gro v. Bockelmann*, 88 Md.App. 323, 594 A.2d 1190 (1991). *But see* the discussion in *Holland v. Woodhaven Building & Development*, 113 Md.App. 274, 687 A.2d 699 (1997). In the case before us, the County Council acted and, by ordinance dated October 15, 1996, chose by comprehensive rezoning the same zoning that existed prior to the Board's grant of the piecemeal reclassification petition. Appellants conclude that the Council's legislative act supersedes the Board's action and is presumptively correct. *See Coppolino*, 23 Md.App. at 369, 328 A.2d 55.

Appellee asserts that the County Council has evinced an intent not to apply the 1996 comprehensive rezoning to the Property, as shown in Baltimore County Code § 2–356(n). Subsection (n) is set forth verbatim, and we have underlined that portion of the subsection relied on by appellee. It provides:

*Use of property.* Property may be reclassified under this section only upon making the findings required under section (j) of this section. Property may not be reclassified solely on the basis of documentation relating to the property's proposed use. However, any provision of section 26–122 to the contrary notwithstanding, if the petition to reclassify the property does include such documentation and is granted, the property may be used only in accordance with the plan included within that documentation; the zoning

classification of any such property will revert to the previous classification unless, within three (3) years after the date of the final order granting the petition, the property is being used in accordance with the plan or, in a case where development is necessary to implement the plan, unless the development either is completed or has been substantially undertaken and is being diligently pursued to completion. *The requirement that such a property be utilized in accordance with a plan and the provision that otherwise the classification of the property will revert will not be affected by the subsequent enactment of a zoning map, pursuant to section 26–124 or 26–125 of this Code unless the zone classification of the property is further changed by that map.*

(Emphasis added.)

Appellee asserts that a petition for reclassification granted by the Board pursuant to a documented site plan is not affected by the adoption of a subsequent comprehensive zoning map unless the Council changes the classification granted by the piecemeal rezoning process. According to appellee, because the Board's action was not final in the case before us, there was no "change" in the 1992 comprehensive zoning prior to the Council's action in 1996, and the Council did not "further change" the classification in 1996. By making no change, the County Council kept the same zoning, subject to the pending reclassification case. Appellee points out that if the Council's adoption of the 1996 zoning map negated the Board's approval of the reclassification petition, protestants would be able effectively to use the appeal process to delay approval of any piecemeal petition for reclassification until adoption of the next comprehensive zoning map. Appellee concludes that, if this Court determines that this issue is moot based on the County Council's action, it will "sound the death knell for interim rezoning," presumably in Baltimore County only.

Very often in the litigation process, courts are asked to search for legislative intent, and we once again embark on that

journey. We frequently stop searching when we find words, aided by rules of construction, that reveal the legislative intent. In the case before us, we must journey further, as we are permitted to do, and look to the legislative scheme and the practice and procedure of the various entities involved in the Baltimore County zoning process. *See Linkus v. Md. State Board of Heating Ventilation, Air–Conditioning & Refrigeration Contractors,* 114 Md.App. 262, 274, 689 A.2d 1254 (1997). In doing so, we lament the absence of information in the record that would inform us as to the general practice and procedure in Baltimore County with respect to the process of documented site plan rezoning since it was adopted in 1978.[8] Such information might be relevant to legislative intent and might enlighten us with respect to the practical ramifications of our decision on day-to-day practice in Baltimore County.

We do know that the County Council engages in a comprehensive zoning map process every four years, and that the Board is delegated the power of interim rezoning via piecemeal applications. Baltimore County Code § 2–356. "For the purpose of considering contemporaneous zoning reclassification petitions in relation to each other and according to a standard schedule, . . . ." semi-annually recurring schedule periods are established as follows:

| *April—October Cycle* | | *October—April Cycle* |
|---|---|---|
| Period I April 16—May 31 | and | October 16—November 30 |
| Period II June 1—July 31 | and | December 1—January 31 |
| Period III August | and | February |
| Period IV September 1— December 31 | and | March 1—June 30 |

Section 2–356(c). Each petition for reclassification must be filed no later than 45 days prior to the beginning of the next

---

8. Appellants have provided us with the Planning Board report dated October 20, 1977, in which the documented site plan process was proposed. The report apparently. led to the adoption of the site plan provisions in 1978. See Baltimore County Code § 2–356(*l*) and (n). The report proposed that the law be changed so that the uniformity clause would not apply in the case of a petitioner who submits a plan showing how his property is to be used if rezoned. It is little help to us in resolving the specific issue in the case before us.

succeeding cycle. Section 2–356(b). Section 2–357 provides that petitions for reclassification may not be filed with the Board from April 16 to October 15 of the year in which the comprehensive zoning map process is to be completed. The section provides:

**Suspension of reclassification petition filing during preparation of new or revised zoning map.**

No reclassification petitions [other than those exempted] shall be received for filing by the board of appeals from April 16 through October 15 of any year in which the County Council is preparing or modifying the new or comprehensively revised zoning map then to be approved and adopted. Any request for zoning reclassification may be presented at the appropriate time of the planning board or county council during such a period, however, for consideration in the preparation or modification of the new or comprehensively revised zoning map then to be approved and adopted. The purpose of this section shall be to provide for the orderly nonduplicate consideration of reclassification requests within the context of a comprehensive zoning map, when such map is under review.

It is clear from § 2–357 that the County Council envisioned that the Board would handle interim rezoning requests filed with the Board prior to April 16 of the final year of the comprehensive zoning map process. Any petition for reclassification filed on April 16 through October 15 of any such year shall be considered by the Planning Board in its deliberations, but ultimately is folded into the comprehensive zoning process to be acted on by the Council. The Council, it seems, effectively delegated interim rezoning authority and all site plan rezoning authority to the Board.

 Consequently, the petition in the case before us was properly before the Board, and the fact that the Council did not change the zoning in accordance with the Board's action, which was not final, does not evidence a legislative intent to disapprove the site plan reclassification approved by the Board. This result is consistent with the fact that the Council, in delegating the interim power to change the zoning classifi-

cation of property in § 2–356, specifically exempted the Board from the uniformity requirement in § 26–122, *see* § 2–356(n), but did not exempt itself from the requirements contained in § 26–122. Because the Board's action on September 19, 1996, was not final [9] at the time of the Council's action,[10] the Council, compelled as it was to honor the uniformity provision, could not change the classification of the Property, as had the Board, and still have it be subject to the site plan.

We note that, in the proceedings before the Board, the Planning Board recommended that the petition for reclassification be granted but, in its report to the County Council, recommended no change in the existing zoning. In light of the potential "reversion" to the "previous classification" if the property is not developed in accordance with the site plan within three years, the action of the Planning Board and the retention of that classification is consistent with our understanding of the legislative scheme. In other words, the Council's "no change" in zoning is consistent with the Planning Board's recommendation to the Board and the Board's action.

■ We hold that when a petition for reclassification, supported by a site plan, is filed with the Board prior to April 16 of a year in which the County Council concludes the comprehensive zoning map process and there has been no final decision by the Board, in both a procedural and vesting sense,[11] prior to action by the County Council on the compre-

---

9. The Board's action was not final because it was subject to judicial review and because a documented site plan rezoning "will revert to the previous classification unless, within three years after the date of the final order granting the petition, the property is being used in accordance with the plan or, in a case where development is necessary to implement the plan, unless the development either is completed or has been substantially undertaken and is being diligently pursued to completion." *Baltimore County Code* § 2-356(n).

10. We were informed at oral argument that the practice in Baltimore County is that a documented site plan rezoning by the Board is not reflected on the official zoning map until the Board's action is final in both a procedural and vesting sense. See the preceding note.

11. See n. 9 and n. 10, *supra*.

hensive map proposal, the County Council's action does not supersede the action or ultimate action of the Board granting the petition unless the Council changes the existing zoning classification or otherwise expressly indicates a disagreement with the proposed conditional rezoning. We reach this conclusion because there is no specific mechanism in the Code for the Council to indicate that it wants to retain the existing zoning but without the conditional rezoning. In this case, there was no change in classification and we have not been presented with nor can we find such express indication.

In a given case, if the Board's action is final, in both a procedural and vesting sense, before the comprehensive rezoning is adopted, the Board's decision has the effect of law. If the Board granted the petition, then the zoning classification was "changed" prior to Council action. In that event, the new classification subject to the site plan prevails unless the new classification is changed by the Council. As a practical matter, this means that any person interested in ascertaining the existing or inchoate zoning classification of a particular property must check, at a minimum, the zoning map and the records of the Board. A person interested in possible rezoning will also have to check the record of pending Board matters. As pointed out at oral argument, this process generates two sets of zoning maps, only one of which is the "official" zoning map. Such a result is unsettling, but as indicated above, we have assumed the validity of this scheme of zoning.

## II.

Appellants contend that the prerequisite of Baltimore County Zoning Regulation 1A00.3.A.1.a is valid and that it should have resulted in disqualification of the petition for reclassification because there is no planned public water and sewer service in the area within two years. Section 1A00.3.A.1.a is applicable to R.C. zones and provides that no petition to reclassify an R.C. zone or portion thereof may be accepted for filing by the "zoning commissioner" unless there is planned

public water and sewer service to the area within two years after the date the petition is submitted.

Appellee asserts that this issue is not properly before us because the issue was decided in the first Board decision and not in the second decision. Appellee, relying on the law of the case doctrine as applied in *Fiol v. Howard County Board of Appeals,* 67 Md.App. 595, 508 A.2d 1005 (1986), asserts that the scope of review in this case is limited to the matters decided in the second Board decision and the second circuit court decision.

In our view, *Fiol* is distinguishable. In *Fiol,* the following sequence occurred: the Board of Appeals issued its decision; it was appealed to the circuit court; the circuit court remanded the case to the Board; the circuit court's decision was appealed to this Court; this Court affirmed; after remand, the Board's decision was again appealed to the circuit court; and the circuit court's decision was again appealed to this Court. We held that matters which could have been raised in the first appeal were not properly before us on the second appeal. The significant distinction from the case before us is that the *Fiol* matter was before us the second time.

We believe that *Loveday v. State,* 296 Md. 226, 462 A.2d 58 (1983), while not on point, is more instructive to our present case. In *Loveday,* the following sequence of events occurred: an appeal from the circuit court to this Court; this Court vacated the criminal sentence imposed below and remanded the case; a writ of *certiorari* was not requested; the case was again appealed to this Court; this Court affirmed the judgment; *certiorari* was requested and granted. The Court of Appeals held that it could review all actions of subordinate courts and make rulings consistent with applicable law. The Court distinguished situations in which the case had been before it on a prior occasion, stating that in the latter instance, *the law of the case* applies to all issues decided in the first appeal or which could have been raised and decided in the first appeal.

■ In the case before us, the opinion and order of the circuit court, even though it included an order of remand, was a final appealable judgment. *See Md. Comm'n on Human Relations v. Baltimore Gas & Electric Company*, 296 Md. 46, 459 A.2d 205 (1983). Indeed, appellants noted an appeal but dismissed it prior to briefing and any action by this Court. The dismissal of the appeal was voluntary pursuant to Rule 8–601. The second petition for judicial review was filed and considered in the same case as the first petition for judicial review. The only issue before the circuit court was whether the new zoning classification was warranted. The case is now before us for the first time. In our view, we are not precluded from reaching and deciding the issues presented. *See Prince George's County v. Zayre Corp.*, 70 Md.App. 392, 403, 521 A.2d 779 (1987); *Breedon v. Md. Dep't of Education*, 45 Md.App. 73, 86, 411 A.2d 1073 (1980).

In *Zayre* and *Breedon*, the doctrine of issue preclusion was held not to apply on a second circuit court review of an administrative agency's decision when the first review resulted in a remand. *Zayre* and *Breedon* were decided under the Administrative Procedure Act, but the rationale is applicable to this case. We see no difference between the pertinent provisions of that Act[12] and Md. Rule 7–209, which governs this case. Rule 7–209 provides:

> Unless otherwise provided by law, the court may dismiss the action for judicial review or may affirm, reverse, or modify the agency's order or action, remand the action to the agency for further proceedings, or an appropriate combination of the above.

If and when a case returns to the circuit court after any "further proceedings" under the Administrative Procedure Act or Rule 7–209, it is a continuation of the prior proceeding.

■ We now turn to the merits of appellants' second issue. The Baltimore County Charter, Article VI provides for the

---

**12.** *See* Md.Code, State Government, § 10–222(h). A court may affirm, reverse, or modify the decision or "remand ... for further proceedings."

establishment, powers, and functions of the Board of Appeals. Section 602(e) provides:

> (e) The county board of appeals shall have original and exclusive jurisdiction over all petitions for reclassification.

Baltimore County Zoning Regulation § 1A00.3.A.1.a, by its terms, applies to the "zoning commissioner." Even if the regulation were applicable to the Board of Appeals, it would be invalid for two reasons. First, the Charter prevails over the Code in case of a conflict. *See* Baltimore County Charter § 1010. Second, § 2–356, part of the Baltimore County Code, requires that the Board consider the availability of public water and sewer but does not mandate its availability within any prescribed period of time. The Code prevails over regulations in the event of a conflict. *See* Baltimore County Code § 26–117.

With respect to the narrow issue of the availability of public water and sewer, the finding of the Board is supportable in that it is apparently uncontradicted that public water and sewer is unnecessary for appellee's proposed development.

### III.

With respect to appellants' third issue, appellee again argues that the issue is not before us for the same reasons asserted with respect to appellants' second issue. The discussion in that context applies with equal force here.

██ Regarding the merits, appellants argue that the finding of mistake rests primarily on the testimony of one witness, George Gavrelis. Appellants argue that Gavrelis's opinions were conclusory or quasi-conclusory and, thus, insufficient. Asserting that this case is controlled by this Court's decision in *People's Counsel v. Beachwood*, 107 Md.App. 627, 670 A.2d 484 (1995), appellants argue that the petitions in this case and in *Beachwood* both premise mistake on conclusory planning opinions, documented site plans, a planning staff report, advice in the master plan, economic needs, and management of sewerage systems.

▮▮▮▮▮▮▮ In order to find legal mistake, there must be evidence that assumptions or premises relied on by the County Council were invalid. *Beachwood,* 107 Md.App. at 645, 670 A.2d 484. This situation is different from the exercise of bad judgment based on complete and accurate information. *Id.* The burden is on the entity seeking reclassification to show the conditions that made the comprehensive zoning incorrect and the failure of the Council to have considered those conditions. *Id.* Hardship and economic disadvantage are insufficient; in that connection, there must be a showing that the owner is deprived of all reasonable use of his property. *Beachwood,* 107 Md.App. at 653, 670 A.2d 484. An expert opinion alone is insufficient unless there are facts to support it.

Although the recommendation of the Planning Board and the consistency of the proposed use with the Master Plan would have been insufficient alone, the Board, in this case, found that it would have been impossible for the County Council to have known of or to have foreseen in 1992 that the septic systems would fail, that the parcels could only be developed if combined, and that in fact they would be combined for that purpose. Whether we would have reached the same conclusion based on those facts is not the issue. The question is whether there is legally sufficient evidence to support the Board's conclusion, and while it barely meets the test, we hold that it does so.

## IV.

▮▮▮▮ Board Rule 1(c) provides that, with exceptions not relevant here, three members of the Board must sit for the purpose of conducting the business of the Board. Relying on *Clark v. County Board of Appeals for Montgomery County,* 235 Md. 320, 201 A.2d 499 (1964), appellants argue that the rule requires a decision by three members who were at trial.

*Clark* involved an appeal from an order affirming a decision by the Montgomery County Board of Appeals granting a special exception. The Montgomery County Code required a public hearing prior to decision and required that at least

three members must concur in all decisions. Two members were present at the hearing and a third member concurred in the decision after reading the transcript and reviewing the exhibits.

The Court of Appeals discussed the practice in the federal system and in some states for absent members of administrative agencies to participate in decisions based on a review of transcripts. The Court also recognized the practice in some states of requiring the presence at the hearing of all members who participated in the decision. In the case before it and based on its construction of the county ordinance, the Court concluded that at least enough members to constitute a quorum for decision should be present at the public hearing.

On remand of the case before us, the first decision issued by the one remaining panel member was subsequently rescinded and is not before us. The decision by the three members that was ultimately appealed and is before us was rendered in accordance with the limited purpose contained in the order for remand entered by the circuit court. Fulfillment of that purpose did not require a new hearing.

■■■ The Board recognized that there was no adverse expert testimony on the issue on remand and that the issue was of a technical nature. The Board noted that the evaluation of lay witness credibility and demeanor was not a material factor in determination of the issue before it. We believe that the Board could have properly premised its decision on a review of the transcript and the remainder of the written record. In our view, the holding in *Clark* has not been violated when a quorum participates in the proceedings on remand and when an assessment of credibility of witnesses is not required. *See Prince George's County*, 70 Md.App. at 400–402, 521 A.2d 779; *Van Teslaar v. Bender*, 365 F.Supp. 1007 (D.Md.1973).

## V.

■■■ Appellants' final contention is that the second Board opinion did not articulate findings as required by Baltimore

County Code § 2–356(j)(2). We disagree. The Board found that reclassification of the Property would not impact transportation facilities, utilities, and schools, would not impact solid waste disposal facilities, would not impact the capital program, would not impact recreational facilities, schools, or population trends, and would not adversely affect water supply facilities and the environment. In short, the Board addressed the pertinent requirements contained in § 2–356(j)(2).

 Appellants have filed a motion for sanctions pursuant to Rule 8–206(e). The basis of the motion is that appellee included in the appendix to its brief copies of the information reports filed in this Court after a notice of appeal was filed from the first circuit court decision and prior to its voluntary dismissal. Information in reports filed pursuant to Rule 8–206 is confidential and its purpose is limited to settlement negotiations. We have not considered the information reports in the resolution of this appeal. We perceive no bad faith on the part of appellee or its counsel, and we deny the motion for sanctions.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANTS.**