744 A.2d 63

**EASTERN SERVICE CENTERS, INC.**

v.

**CLOVERLAND FARMS DAIRY, INC., et al.**

**No. 1814, Sept. Term, 1998.**

Court of Special Appeals of Maryland.

Jan. 11, 2000.

2

Thomas D. Renda (Siskind, Grady, Rosen & Hoover, P.A., on the brief), Baltimore, for appellant, Eastern Service Centers, Inc.

Benjamin Rosenberg (Stanley S. Fine, Kevin J. Pascale and Rosenberg, Proutt, Funk & Greenberg, LLP, on the brief), Baltimore, for appellee, Cloverland Farms Dairy, Inc.

Sandra R. Gutman, Associate Solicitor (Frank C. Derr, Deputy City Solicitor, on the brief), Baltimore, for appellee, Mayor and City Council of Baltimore.

Argued before MOYLAN, SONNER, and THOMAS J. BOLLINGER (specially assigned), JJ.

SONNER, Judge.

This case arises out of a controversy between a traditional gas station and another gas station combined with a convenience store, an emerging retail trend throughout Maryland. Appellee, Cloverland Farms Dairy, Inc. ("Cloverland"), obtained a zoning permit from the Board of Municipal and Zoning Appeals of Baltimore City ("Zoning Board") to construct a gasoline service station with an accessory convenience store. Appellant, Eastern Service Centers, Inc. ("Eastern"), owns an Amoco service station approximately one block from Cloverland's proposed site. This appeal and cross-appeal arise from a judgment by the Circuit Court for Baltimore City

affirming the Zoning Board's decision. The court found that a reasonable person could find the convenience store an "accessory use" to the gasoline station. Eastern brings this appeal, contending Cloverland did not offer substantial evidence that the convenience store was an accessory use to the gasoline station. In particular, Eastern asserts that the Zoning Board and trial court erred in finding that a convenience store is customarily found or associated with gasoline service stations.

Appellees, Cloverland and the Mayor & City Council of Baltimore, cross-appeal asserting the circuit court had no jurisdiction to revise the date of judgment, and thus, Eastern's appeal was untimely filed. Cloverland also contends Eastern has no standing to appeal and that there was substantial evidence to find the convenience store an accessory use to the gasoline station. We hold the appeal was timely filed, but dismiss the case for lack of standing.

On June 25, 1997, Cloverland applied for a zoning permit to construct a gasoline service station with an accessory convenience store. The proposed site, currently a vacant lot owned by Home Depot USA, Inc., is located in an M–2–1 Industrial District in which automobile service stations are permitted as "conditional uses," and carry-out food shops are permitted. Food/grocery stores, although not listed as permitted or conditional uses in the zone, may be permitted as "accessory uses." A convenience store is considered a grocery store, and therefore may be permitted as an accessory use.

Cloverland owns 68 Royal Farms stores in the Baltimore metropolitan area, 20 of which also sell Emroy gas, a Royal Farms brand of gasoline. On the proposed site, Cloverland would construct an Emroy gasoline station and accessory Royal Farms store on 4,008 square feet of land. Four double gasoline pumps would be installed, which would allow eight cars to pump gas simultaneously. The total square footage of the store would be 2,900 square feet. According to Cloverland, 630 square feet of the store is actually part of the

gasoline station, including space for the cashier,[1] restrooms, and gasoline service items, such as motor oil. In addition, the remaining 2,270 square feet would consist of 1,500 feet of carry-out food items, a permitted use in the zone. Therefore, according to Cloverland's description of the plan, the remaining 770 square feet is the actual convenience store and should be permitted as an accessory use. An estimated two-thirds of the volume of business would come from the gasoline pumps, although the amount of profit from gasoline would be roughly equivalent to the amount of profit from the store.

The Zoning Administrator denied the permit and Cloverland appealed to the Zoning Board. Eastern submitted a Memorandum to the Board opposing Cloverland's proposal and argued the "full size" convenience store is not an accessory use to the gasoline station. It suggested that more than just 770 square feet consists of the convenience store because a convenience store normally sells items typically used for car maintenance.

The Zoning Board conducted a hearing on March 17, 1998. Cloverland and Eastern were represented at the hearing and both presented evidence and witnesses. During the hearing, the Board reviewed the site plan and thoroughly discussed it. The Board granted Cloverland a permit on March 26, 1998.

Eastern sought judicial review from the Circuit Court for Baltimore City. During trial on August 25, 1998, Judge Byrnes indicated he would affirm the Zoning Board's decision granting Cloverland a permit and asked Cloverland for an Order. Cloverland submitted the Order on August 27, 1998, and Judge Byrnes signed it on August 28, 1998. The entries in the court's computerized docket state:

> 8/28/98 CLOS ORDER OF COURT THAT THE DECISION OF BOARD OF MUNICIPAL & ZONING APPEALS BE AND HEREBY "AFFIRMED" COST TO BE PAID BY PETITIONER /S/BYRNES, J. (10)

---

1. The proposal includes only one cashier for the gasoline sales as well as the store sales.

8/31/98 PLEA CASE SUBMITTED TO THE COURT FOR DETERMINATION W/O THE AID OF JUR BYRNES J

8/31/98 PLEA THE DECISION OF THE BD OF MUNICIPAL AND ZONING APPEALS IS HEREBY AFFIRMED.

8/31/98 CLOS JUDGMENT IN FAVOR OF THE DEF FOR COST. ORDER FD. BYRNES J

Relying on the computerized docket, Cloverland contends judgment was entered on August 28, 1998. However, Eastern relied on a handwritten docket listing only the three entries from August 31, 1998. Eastern submits it was entitled to rely on the handwritten docket and that the Clerk's office was inconsistent in docketing the entry of the order. It is uncontested that the Clerk's office did not mail appellant a copy of the signed order.

Eastern filed an appeal on September 29, 1998. On October 27, 1998, Eastern filed a motion to revise the August 28, 1998 Order, and requested a hearing on the matter. Without a hearing, Judge Byrnes granted Eastern's motion and revised the August 28, 1998 Order to reflect August 31, 1998 as the date of judgment. The court exercised its revisory power using two rationales. First, the court found Eastern was justified in relying on the August 31, 1998 date as the entry of the order. Second, the court found sufficient evidence that appellant did not receive notice of the order and was misled by the clerical error in the court file.

Cloverland contends that the date of judgment should not have been changed from August 28, 1998 to August 31, 1998. If the circuit court erred in changing the date of judgment, this appeal must be dismissed as untimely, pursuant to Maryland Rule 8–202(a), which states that a notice of appeal "shall be filed within 30 days after entry of the judgment or order from which the appeal is taken."

■ We find that the circuit court did not err in revising the date of judgment. A court's revisory power is set forth in Maryland Rule 2–535, which states in pertinent part:

(b) **Fraud, mistake, irregularity.** On motion of any party filed at any time, the court may exercise revisory power and control over the judgment in case of fraud, mistake, or irregularity.

\* \* \*

(d) **Clerical mistakes.** Clerical mistakes in judgments, order, or other parts of the record may be corrected by the court at any time on its own initiative, or on motion of any party after such notice, if any, as the court orders. During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed by the appellate court, and thereafter with leave of the appellate court.

 In this case, having not received a copy of the order, Eastern diligently inspected the court's file to determine the date of judgment.[2] Eastern was entitled to rely on the case docket in the court's file, which unambiguously listed three entries on August 31, 1998: the case was submitted to the court for determination, the decision of the Zoning Board was affirmed, and judgment was entered for defendant.[3] Appellant had no reason to, and was not required to, use the computerized docket to search for an earlier or inconsistent judgment date. According to MARYLAND RULES COMMENTARY, "Litigants and third persons can look at the file or docket to determine when the judgment was entered, and they are entitled to rely on that date as a public record." *See* Paul V. Neimeyer & Linda M. Schuett, MARYLAND RULES COMMENTARY, Rule 2–601, at 446 (2d ed.1992). This entitlement is absolute, "regardless of the accuracy of that record. If the file or docket entry contains an error, the Court of Appeals has held that its language will nevertheless control until the error is corrected." *Id.* at Supp. 122.

---

**2.** Eastern's affidavit states he inspected the file on or about September 26, 1998.

**3.** *See supra* page 5–6 for the verbatim court entries.

Cloverland's argument that the handwritten docket located in the court file was not the "official" court docket is unfounded. Their alternative argument that even if the court entered two judgment dates, the first one controls, is also erroneous. Cloverland relies on Maryland Rule 8–202(f):

> Date of entry. "Entry" as used in this Rule occurs on the day when the clerk of the lower court *first makes* a record in writing of the judgment, notice, or order on the file jacket, on a docket within the file, or in a docket book, according to the practice of that court, and records the actual date of the entry.

(Emphasis added.) Appellees' interpretation that the first recorded judgment date controls contradicts the necessity for having a judgment date that is precise and certain.

Our holding should be read narrowly. Here, two different judgment dates were entered.[4] Appellant, who did not receive a copy of the order, diligently followed the case and reasonably relied on the latter date of judgment. The circuit court properly exercised its revisory power to correct this mistake and irregularity of having two judgment dates in the record.

■ We now address whether appellant has standing to raise this appeal. In Maryland, a person whose sole reason for appealing a decision from the Zoning Board is to prevent competition with his established business does not have standing. *Bryniarski v. Montgomery Co.*, 247 Md. 137, 145, 230

---

4. Judge Byrnes viewed the controversy between the dates as "the date of the actual signing of the order, August 28, 1998; or the date on the docket sheet of the court file, August 31, 1998." *See* Mem. Op. Granting Motion to Revise Order, at 3. It is clear the date the order was signed is not the date of judgment. The MARYLAND RULES COMMENTARY states:

> The file jacket or docket must reflect the date the clerk physically made the entry. The day the clerk received or learned of the verdict or decision is irrelevant. For example, if a judge signs a final order and judgment dated January 1 and hands it to the clerk for entry on January 3 and the clerk makes the entry on the file or docket on January 5, January 5 is the date of judgment.

Paul V. Neimeyer & Linda M. Schuett, MARYLAND RULES COMMENTARY Rule 2–601, at 446 (2d ed.1992).

A.2d 289 (1967); *Kreatchman v. Ramsburg, et al.*, 224 Md. 209, 219, 167 A.2d 345 (1961).

■ Eastern's sole motive for this appeal is to prevent competition. In fact, during the Zoning Board hearing, the President of Eastern, Robert Christ, conceded as much. When he was asked why he opposed Cloverland's plan, he responded:

> Well, I have five Amoco stations and three ... of them [have] an Emroy, Royal Farms, location near them and basically what they do is they come in and destroy the gasoline market to enhance their store sales, and they basically—you know, they've put several people out of business in the areas where they go.... [M]y basic objection is what they'll do to the market....

Because appellant has no standing, we dismiss the case. However, given the scarcity of cases discussing accessory uses, we will evaluate the substantive issue. Even if appellant had standing, we would affirm the circuit court.

■■ A finding of an administrative agency must be upheld if there is any evidence that makes the issue "fairly debatable." *See People's Counsel v. Beachwood,* 107 Md.App. 627, 637, 670 A.2d 484 (1995) (citing *Eger v. Stone,* 253 Md. 533, 542, 253 A.2d 372 (1969)). Findings of fact must be upheld "if they are based on substantial evidence and if reasoning minds could reach the same conclusion based on the record." *See People's Counsel v. Prosser Co.,* 119 Md.App. 150, 167–68, 704 A.2d 483 (1998) (quoting *Colao v. Prince George's County,* 109 Md.App. 431, 675 A.2d 148, *aff'd,* 346 Md. 342, 697 A.2d 96 (1997)). An agency's conclusions of law, however, are not afforded the same deference and are reviewed using the abuse of discretion standard. *Prosser Co.,* 119 Md.App. at 168, 704 A.2d 483; *County Comm'rs v. Zent,* 86 Md.App. 745, 753, 587 A.2d 1205 (1991).

■ The Zoning Board's determination that the convenience store is an accessory use to the gasoline station is a finding of fact. Therefore, we review this finding with defer-

ence and evaluate whether the issue is fairly debatable or if reasoning minds could have reached the same conclusion.

The Baltimore City Zoning Ordinance defines accessory use as:

> 1. *Accessory Use or Structure:* a use or structure which: (a) *is customarily incident and subordinate to and serves the principal use or structure;* (b) is subordinate in area, extent, or purpose to the principal use or structure; (c) is located on the same lot as the principal use or structure served—except those located in planned developments; and (d) contributes to the comfort, convenience, or necessity of occupants, business, or industry in the principal use or structure served.

Baltimore City Code, Article 30 § 13.0-2 (emphasis added) (1983). Eastern challenges whether the proposed convenience store is customarily incident and subordinate to the gasoline station.

We review the testimony from the Zoning Board hearing as well as the Zoning Board's Resolution to determine whether there is substantial evidence in the record regarding accessory use and whether reasoning minds could have reached the same conclusion. During the Zoning Board proceedings, the Board heard from eight witnesses. Cloverland presented a witness, Peggy Drake, from the Baltimore City Department of Planning and Chair of the City Site Plan Review Committee, who testified that the convenience store was an accessory use to the gasoline station. In its Resolution, the Board gave particular weight to Ms. Drake's testimony. Eastern also presented a witness, Norman Gerber, former Director of the Zoning and Planning Office in Baltimore County and the City of Laurel, and currently a private consultant, who testified that the convenience store did not meet "the *traditional* definition of an accessory use." [5] Cloverland's counsel also proffered that another witness, Frank Shilling, would testify

---

**5.** Rather, Mr. Gerber described the convenience store as a separate primary use that was located on the same site as the gasoline station.

that more than two-thirds of Cloverland's sales are expected to come from gasoline sales.

In addition, Cloverland mentioned four other instances in which the Zoning Board approved a convenience store as an accessory to a gasoline station. In one case, the Board approved a Mobil gas station with a 2,000–square–foot building containing a Mobil Mart, a Subway, and a Dunkin Donuts.[6]

Furthermore, the Zoning Board thoroughly discussed the dimensions of the proposed site. Cloverland contended that the convenience store portion of the store was only 770 square feet; whereas, Eastern presented testimony that a single building is not commonly divided into its different uses.

We also note that we agree with Judge Byrnes's statement during trial regarding the emerging trend of gasoline stations operating with convenience stores. Judge Byrnes stated, "[A] court and an administrative body can take almost judicial notice of what's happening." In one of the few cases discussing this trend, the New York Supreme Court stated that it is "generally known—that the sale of some products at gasoline stations, or the sale of gasoline in connection with convenience store operations, is becoming commonplace in this country." *Exxon Corp. v. Board of Standards and Appeals of City of New York*, 128 A.D.2d 289, 298, 515 N.Y.S.2d 768 (1987).

We find that there was substantial evidence in the record and that reasoning minds could reach the conclusion that Cloverland's proposed convenience store is an accessory use to the gasoline station. Because there was conflicting testimony during the Zoning Board hearing about whether the convenience store met the statutory criteria for accessory use, the issue was fairly debatable.

In fact, the Zoning Board's Resolution clearly states that it gave due regard to the testimony presented at the hearing, as

---

6. Eastern distinguished the Dunkin' Donuts shop from the instant case by describing the Dunkin' Donuts as a "carry-out shop." However, Eastern ignored that 1,500 square feet of the 2,270–square–foot convenience store will function as a carry-out food shop.

well as to reports from city agencies, particularly the Department of Planning, and to the standards for conditional uses under Section 11.05a of the Zoning Ordinance. The Board specifically listed twelve factors it considered in overturning the Zoning Administrator's denial of Cloverland's application.[7]

Eastern's reliance on *County Commissioners of Carroll County v. Zent* for the proposition that Maryland uses one of the most restrictive definitions of accessory uses is misplaced. 86 Md.App. 745, 768, 587 A.2d 1205 (1991). In discussing how to evaluate whether a use is "customarily incident" to another use, this Court did not expressly adopt the restrictive standard described in *Lawrence v. Zoning Board of Appeals. Zent,* 86 Md.App. at 767–68, 587 A.2d 1205 (citing *Lawrence v. Zoning Bd. of Appeals,* 158 Conn. 509, 264 A.2d 552 (1969)). Rather, this Court stated, "[W]hen a use does not change the basic nature of the primary permitted nonconforming use and is truly incidental to, and supports the nonconforming use, it is an accessory use and, unless expressly prohibited by statute, is permitted." *Zent,* 86 Md.App. at 769, 587 A.2d 1205. In this case, the convenience store does not change the basic nature of the gasoline station and it is not expressly prohibited by statute. It is fairly debatable whether the convenience

---

7. The Resolution states:

The Board in making its determination, has considered (1) the nature of the proposed site, including its size and shape and the proposed size, shape and arrangement of structures; (2) the resulting traffic patterns and adequacy of proposed off-street parking and loading; (3) the nature of the surrounding area and the extent to which the proposed use might impair its present and future development; (4) the proximity of dwellings, churches, schools, public structures and other places of public gatherings; (5) accessibility of the premises for fire and police protection; (6) accessibility of light and air to the premises and to the property in the vicinity; (7) the type and location of adequate utilities, access roads, drainage, and other necessary facilities that have been or will be provided; (8) the preservation of cultural and historical landmarks; (9) any Urban Renewal Plan approved by the Mayor and City Council or the Master Plan for the City approved by the Planning Commission; (10) all standards and requirements contained in this Ordinance; (11) the intent and purpose of this Ordinance as set forth in Chapter 1; and (12) any other matters considered to be in the interest of the general welfare. *Resolution,* at 8–9.

store is "truly incidental" to and supports the gasoline station. Therefore, this court will not substitute its judgment for that of the Zoning Board.

Eastern also relies on *Kowalski v. Lamar,* which is inapplicable. 25 Md.App. 493, 334 A.2d 536 (1975). In *Kowalski,* there was only one use of the property and this court held that there cannot be an accessory use if there is no primary use. That is not the case here. There was sufficient evidence that the proposed convenience store is accessory to the gasoline station.

**CASE DISMISSED.**

**APPELLANT TO PAY COSTS.**